Nelson, D. J.
The present suit is brought by the complainant for a partition of real estate described in the bill of complaint. Cross-bills are filed by some of the defendants; one by Taylor, who claims contribution for taxes paid by him upon the entire property, most of it pending a suit to enforce the specific performance of a contract for the sale of an undivided one-half of the lands.
The only question in controversy arises upon the claim of Taylor as set out in his cross-bill. The facts are these: On May 16, 1863, the following contract was entered into between P. C. D. McKay, of Des Moines, and the county of Cerro Gordo, in the state of Iowa:
“Agreement made the sixteenth day of May, A. D. 1863, between the county of Cerro Gordo, state of Iowa, of the first part, and F. C. D. McDay, of Des Moines, in said state, of the second part, witnesseth: Whereas, the said county has. expended large sums of money in attempting to acquire title- *506 to her swamp lands, and to secure the claim of the county on the United States for such of her swamp lands as have been sold by the general government, or located with warrants, and has, so far, been unsuccessful; and, whereas, by the recent decisions and rulings of the commissioner of the general land office, the swamp-land interest and claim of said county is involved in great jeopardy and will require expenditures in costs, expenses and efforts, in order to secure it: Now, therefore, said county hereby agrees to put its swampland interest and claim into the hands of the party of the second part for prosecution, settlement and collection as fally as the same exist, whether for lands, scrip or cash. The county also agrees to furnish the records and papers in its possession to the party of the second part to aid said work.
“The county also agrees to nominate and appoint such agents as the party of the second part may desire to select or reselect said lands, if necessary, and to make the indemnity proofs, and also to nominate to the governor such persons as the party of the second part may request for special agent, under the thirteenth section of the act of the general assembly of the state of Iowa, entitled £ An act to authorize the governor and board of county supervisors to appoint agents in regard to swamp lands belonging to the state of Iowa, and to define their duties,’ approved April 8, 1862; such agent to give the bail by law required, and to deliver the proceeds to the board of supervisors as required by said thirteenth section of said act.
“The party of the second part take said interest and claim for said purpose, and agree to prosecute the same thoroughly .and with dispatch; to make such selections and proofs as may be necessary, so far as practicable; to retain such counsel and help as may be necessary to pass said claim at Wash.ington; to close up and finish the business at the earliest practicable time; and to pay all the expenses of all .such agencies and of doing said business at Washington r.ud elsewhere, so that said county shall have nothing to pay, whatever, if nothing is obtained out of said interest or claim; and in case any lands, scrip or money, or all, are obtained, then, out of such proceeds, the county is to pay to the parties ol *507 the second part the sum of $1,000, to cover such costs and expenses and efforts in full, and the remainder of all the proceeds of such business is to be equally divided between the parties hereto; the county to take and have one-half thereof, and to pay and deliver the other half thereof to the party of the second part; each sharing alike in such equal division as to land, scrip and money.
“By order of the board of supervisors.
{Stamp.]
“Jarvis J. Bogers, Chairman.
“David Butts,
“Gabriel Pence,
“Edgar Osborne,
“E. D. Huntley,
“Supervisors,
^Attest: P. C. D. Moray.
“H. B. Gray, Clerk.
“By H. G. Parker, Deputy.
™ State of Iowa, Cerro Gordo County — ss. -
“I, B. P. Hartsorn, clerk of the board of supervisors in and for said county, do hereby certify the foregoing to be a full, true and correct copy of a contract entered into by and between the aforesaid county and P. C. D. McKay on the sixteenth day of May, 1863, as appears from the original now on file in my office.
“Witness my hand and the seal of said board this sixteenth day of June, 1866.
[l. s.] “B. P. Hartshorn,
{Stamp.] “Clerk Board of Supervisors.”
Under this contract McKay and his associate, after five years of toil and the expenditure of large sums of money, secured from the United States government, for said county, in cash, $7,257.62, and 30,053 78-100 acres of land. The •«¡ash was remitted by draft of the treasurer of the United States, payable to the order of the governor of Iowa, for the Else of Cerro Gordo county.
*508 The land was approved and patented to the state of Iowa by the United States, for the use of Cerro Gordo county, and on the thirteenth of March, 1868, was patented by the state to Cerro Gordo county; and as this patent recites, in detail, the history of the title, it is here set out in full:
“State of Iowa: To all to whom these Presents shall come— Greeting:
“Whereas, by the act of congress approved September 28, 1850, entitled ‘An act to enable the state of Arkansas, and other states, to reclaim the swamp lands within their limits,’ it is provided that all the ‘swamp and overflowed lands' made unfit thereby for cultivation, within the state of Iowa, which remained unsold at the passage of said act, shall be granted to said state; and, whereas, by an act of the general assembly of the state of Iowa, approved February 2, 1853, entitled ‘An act to dispose of the swamp and overflowed lands within the state, and to pay the expenses of selecting and surveying the same,’ and other acts amending or supplemental thereto, the said swamp and overflowed lands, and the indemnity therefor, were granted to the counties respectively in which the said swamp and overflowed lands may lie or be situated;
“And, whereas, by the first section of the act of congress, approved the second of March, 1855, ‘for the relief of purchasers and locators of swamp and overflowed lands,’ authority is conferred, on certain conditions, to purchasers or locators, who have made entries of the public lands claimed as swamp lands, either with cash or with land-warrants, or with scrip, prior to the issue of patents to the state, as provided by the second section of the act approved September 28, 1850;
“And, whereas, by the second section of the act aforesaid of the second of March, 1855, it is provided, among other things, that upon due proof being produced to the commissioner of the general land office, as therein mentioned, that the class of lands that had been located by warrants or scrip are swamp lands, within the meaning of said act of 1850, that said state shall be authorized to locate a' quantity of like *509 amount upon any of the public lands subject to entry, at one dollar and a quarter per acre or less, and patents shall issue therefor, upon the terms and conditions enumerated in the act aforesaid of March 2, 1855, provided that the said decisions of the commissioner of the general land office shall be approved by the secretary of the interior;
“And, whereas, a special certificate, dated March 1, 1867, was issued by the commissioner of the general land office, authorizing the state of Iowa to locate the quantity of 30,-057.54 acres as indemnity contemplated by the second section of the aforesaid act of the second of March, 1855, for swamp and overflowed lands in Cerro Gordo county, entered of the United States by location of military bounty land warrants, and the said certificate having been returned to the general land office, accompanied by a list showing the selections in satisfaction thereof of the lands hereinafter described, situated in the Sioux City land district;
“And, whereas, the said land hereinafter described has been approved and patented by the United States, in pursuance of the acts of congress aforesaid, to the state of Iowa, to-wit: [Here follows description of the land in controversy] according to the official plats of the survey of said lands:
“Now, therefore, know ye that the state of Iowa, in consideration of the premises, and in conformity with the act of the general assembly aforesaid, have given and granted, and by these presents do give and grant, unto the said county of Cerro Gordo, in fee-simple, to be disposed of according to the several acts of the general assembly relating thereto, the tracts of land above described.
“To have and to hold the same, together with all the rights, privileges, immunities and appurtenances thereunto belonging, unto the said county of Cerro Gordo, in fee-simple, and to its assigns forever.
“In testimony whereof, I, Samuel Merrill, governor of the state of Iowa, have caused these letters to be made patent, and the great seal of the state of Iowa to be hereunto affixed.
“Given under my hand at Des Moines, the thirteenth day of March, in the year of our Lord one thousand eight hun *510 dred and sixty-eight, and of the state of Iowa the twenty-second.
“Samuel Merrill..
“By the Governor.
“Ed. Wright,
“Secretary of State.
“I certify that the foregoing deed is recorded in vol. 1, page —. “C. G. Carpenter,
“Register State Land Office.”
At the June session, 1868, of the board of supervisors, Mr. Savery, who was associated with McKay, reported to them the success of McKay under the contract of sixteenth May, 1863, and demanded a settlement under said contract; but no settlement was effected, and within a few months after-wards the county of Cerro Gordo granted all of said lands to the McGregor & Sioux City Railway Company; before doing so, however, taking from said company a bond of indemnity in words as follows:
“Know all men by these presents, that the McGregor & Sioux. City Railway Company does hereby covenant and agree to and with the county of Cerro Gordo, state of Iowa, in consideration of said county entering into a contract with said company to convey to said company certain lands, held and owned by said county as indemnity for swamp lands, to procure said company to construct a railway in said county;, said McGregor & Sioux City Railway Company will, if said contract is ratified by and held for that purpose, and said lands are conveyed to said company, as specified in said, contract, hold said county free, harmless and exempt from all costs, expenses and liabilities to the American Emigrant Company for any claim or pretended claim, right or demand said American Emigrant Company may have against said county for any part or parcel of said lands.
“Witness the signature of said company, hereto affixed, this August 21, 1868.
[Stamp.] “McGregor & Sioux City R. W. Go.,
“By John Lawler,
“Vice President and General Agent of said Company,”
*511 And afterwards, on the seventh of October, 1872, the said railway company conveyed said lands to Horace S. Taylor by deed in words and figures following:
“Know all men by these presents, that the McGregor & Missouri River Railroad Company, in consideration of the sum of sixty thousand one hundred and seven and 56-100 dollars, to be paid them in five years from date, with annual interest at 7 per cent per annum, payable on the first day of October in each year by Horace S. Taylor, of the city of New York, do hereby sell and convey unto the said Horace S. Taylor the following described lands situated in Woodbury, Sioux and Lyon counties, in the state of Iowa, viz.: All of the lands described in a deed dated fifth of October, 1868, made by the county of Cerro Gordo, Iowa, to the McGregor & Sioux City Railway Company, which company is now named the Mc-Gregor & Missouri River Railway Company, amounting to thirty thousand and fifty-three acres and 78-100 of an acre, which deed is recorded in book “F,” pages 225 to 232, of the "records of Woodbury county, Iowa, and in book “C,” pages 519 to 526, of the records of Sioux City, Iowa, to which deed reference is here made; and they hereby covenant with said grantee that the title to said lands in the same are acquired by the grantors from the county of Cerro Gordo, Iowa, and that the title has in no way been encumbered by the grantors» except by certain contracts of sale, and to which this sale and conveyance is subject, namely:
“Contract for N. \, N. E. of section 5, township 99, ranga 45, to C. H. Moore.
“Contract for N. J of section 4, in township 99, range 45, to S. Lockwood Bailey and certain others.
“Contract for all of section 8, in township 100, range 45, to S. Lockwood Bailey.
“Contract for S. E. \ of section 14, in township 98, range 46, to G. R. Badgerow; and such other contracts (if any) as may have been entered into by O. E. Palmer, agent, which are not yet reported to the company.
“And the grantors will warrant and defend the said lands to the said grantee, and to his heirs and assigns, forever, sub *512 ject to certain contracts as aforesaid, against the claim or demand of all persons whatever claiming the same, by, through or under the grantors. The grantors reserve a vend- or’s lien for the purchase money above named, viz., sixty thousand one hundred and seven and 56-100 dollars.
“In witness whereof they have hereunto set their hand and seal this seventh day of October, A. D. 1872.
“McGregor & Missouri River Railway Company.
“By Russell Sage, President.
“Witness: John A. Hillery. [l. s.]
“J. M. Bush, Assistant Secretary.”
On the fifth of February, 1870, B. F. Allen, who had become associated with F. C. D. McKay in the contract of May 16, 1863, brought a suit in equity, in the district court of Polk county, Iowa, against Cerro Gordo county, the railway company, and the governor of Iowa, to compel a specific performance of the McKay contract.
On the eighteenth of March, 1874, Horace S. Taylor appeared in said cause and asked to be made a party defendant, and filed the following pleading:

To the District Court aforesaid:

“Your petitioner, Horace S. Taylor, respectfully represents that he is the owner in fee in the real estate described in the plaintiff’s petition in this cause, and to recover which plaintiff in this cause brought this action; that said land was conveyed to him by deed by the defendant, the McGregor & Sioux City Railway Company, now called the McGregor & Missouri River Railway Company, dated October 7, 1872, a copy of which deed is hereto annexed, marked Exhibit A, and made a part hereof. Your petitioner therefore asks that he be made a party defendant in this action, and be allowed to defend, and that he be substituted as defendant, in the place and stead of the said McGregor & Missouri River Railway Company.
“Horace S. Taylor.”
A trial was had and a decree ordered in accordance with the prayer of the plaintiff’s bill, by the court below, on the -day of-, 1874.
*513 The cause was taken to the supreme court of the state, and was tried there de novo on its merits, the decree of the district court affirmed, and a new and full and final decree entered in the supreme court on the twenty-second of April, 1875. This decree is set out in full, as an exhibit to complainant’s bill in this cause, and we point only to the following extracts from the same, to-wit: “It is ordered and adjudged that the defendants, the county of Cerro Gordo and McGregor & Sioux City Railway Company, now the McGregor & Missouri River Railway Company, and the defendant Horace S. Taylor, are ordered and directed, within 20 days from this date, to execute deeds of release, with special warranty against conveyances or encumbrances, executed or suffered by them respectively, to the said B. F. Allen, for an undivided one-fourth of all the land hereinbefore described, and to J. C. Savery for an undivided one-eighth of all the lands, etc., with like covenants; and to Angeline J. McKay, for an undivided one-eighth, etc., with like covenants, and deposit tha same with the clerk of this court, etc.
“And that in default of the delivery of such conveyances, duly executed, to the clerk of this court, within twenty days from the rendition of this decree, the clerk of this court is hereby appointed, and he is hereby directed, to execute such conveyance in the name of said several defendants, with like covenants in their name and behalf.
“And it is further ordered and adjudged that the said McGregor & Sioux City Railway Company, now the McGregor & Missouri River Railway Company, purchased the interest of said Cerro Gordo county in the lands in controversy, upon a covenant to save said county harmless and exempted from all costs and expenses by reason of the contract in controversy herein; and that the said county of Cerro Gordo have and recover of the said McGregor & Sioux City Railway Company, now the McGregor & Missouri River Railway Company, all costs in this suit adjudged against said county, and that may have been paid, or that shall be paid, in this cause by said county, or any fund to which it is entitled under this decree.”
*514 Under this decree, the railway company and Taylor having failed to execute the conveyances within the 20 days, the same were executed by the clerk of the supreme court, with the covenants authorized by the decree. These conveyances were executed September 14, 1875.
The defendant “Hervey” obtained his interest in the lands from Savery on June 19,1875, and Stewart from Mrs. McKay on September 25,1875, after the decree for a specific performance, and it is agreed by a stipulation on file that the present interest of parties is: Taylor, one-half (J-;) Sherman, assignee, one-fourth (J;) Stewart, one-eighth (£;) Hervey, one-eighth (!-.)
In considering the question presented it is necessary, first, to determine McKay’s rights under the contract. It was clearly the intention that he should become a tenant in common to the extent of an undivided one-half of all the swamp lands he might secure to the county of Cerro Gordo, and his equitable interest was fixed on March 13, 1868, when the land was patented by the state of Iowa to the county. McKay having fully performed his part of the contract was entitled to a deed from the county for the undivided one-half (J) of the land, and had a right to the use of the property as a tenant in common.
The contract, after its fulfillment by him, impliedly gave a license to such possession as is secured to tenants in common. All that was necessary to be done by the county was to give a deed and thus complete the contract.
In equity, McKay is considered the owner of an undivided one-half of the lands at the time the county obtained the deed from the state. He was entitled from that time to one-half of any income derived from the property. He was interested in protecting the property from waste, and was entitled to all increase and gain on its value, and must share in all the disadvantages, expenses and outgoings. It is claimed that under this contract the right of exclusive possession to the entire lands remained in Cerro Gordo county and the railway company, and its grantee, Taylor, until a conveyance was made under the decree for a specific performance. I do not *515 so understand the equitable rule. I think the doctrine defining the rights and liabilities of a vendee under a contract of this character is settled as I have stated it.
The rule is thus given by Earl, J., (Miller v. Ball, 64 N. Y. 293 :) “It may be stated, as a general rule, that in all eases where the contract is silent as to the possession, the land being vacant, and the vendee has paid the entire consideration, and fully performed on his part, and all that remains for the vendor to do is to give the deed, there must be an implied agreement or license that the vendee may at once take possession and have the use of the land.”
If this doctrine is solid, then, although the county of Cerro Gordo granted all the lands to the McGregor & Sioux City Railway Company, and by the latter they were sold and conveyed to Taylor, with knowledge of all the facts, the equitable rights and liabilities of McKay and his successors in interest are not changed, and they should pay a proportion of the taxes which were a charge upon the land; at least, should reimburse Taylor, who held the lands in trust for them.
It is urged that the county of Cerro Gordo having wrongfully withheld the deed when demanded by McKay, and refused to recognize hie rights under the contract,'and the railway company and Taylor being equally at fault, they should keep down the taxes, and Taylor is not entitled to any favor in a court of equity. If I am right in the construction of this contract, and the equitable interest of the parties thereto was fixed when the condition was performed by McKay, then a refusal by the county to convey his interest, and a grant of the lands to the railway company and to Taylor, did not change his equitable rights. He was placed in no better or worse position, so far as the equities are concerned, by the act of the county. The railway company took the title subject to his equities, and Taylor, with knowledge of the facts, occupied the same position as trustee. If the contract had been completed by the county, and a deed given, McKay and his successors in interest would have been required to pay the taxes. Why should they occupy a better position now ? At least, why should they not reimburse Taylor ?
*516 The counsel urge, in addition, as a reply to such interrogatory, the payment of taxes was voluntary. If so, then, under the well-established doctrine affirmed in the case of Homestead Co. v. Valley Railroad, 17 Wall. 153, 166, Taylor can have no relief. Was the payment of taxes voluntary ? I think not. Taylor held the title to an undivided one-half of the lands in trust for McKay and his successors in interest. It was so decided in a suit for specific performance, and Taylor was ordered to make conveyances. He was required, while such trustee, to protect the title, and prevent a sale of the property and extinguishment of the interest he held in trust. He did so, and the payment of taxes was in fulfilment of his duty, and not voluntary. See Duff v. Dorman, 52 N. Y. 634.
The authorities cited by counsel are not in conflict with the views above expressed. Judge Wright, in one of the Iowa cases, decided that in contracts for the sale of land, silent as to payment of taxes, the party in actual possession of the land should keep down the taxes. It is stipulated the land here was vacant. In the English case of Carrodus v. Sharp, 20 Beav. 56, there was an agreement for the sale of a lease of a mill by the plaintiff. By the terms of the lease no assignment could be made until the assent of the lessor was obtained. The parties had some differences about the value of machinery, and the defendant refused to perform. The assent of the lessor was obtained, and a decree for specific performance being granted, and a reference as to title being had, it was decided that the date when the assent of the lessor was obtained fixed the time when defendant became a purchaser, and when he ought to take possession, and after that period he should pay the expenses and outgoings.
In this case McKay became a purchaser, and was entitled to his equitable interest when the county obtained a patent from the state, and the expenses and outgoings after that time must be paid by him and his successors.
Again, it is urged that the decree of the supreme court of Iowa, granting specific performance, settled all the equities, and a conveyance being ordered “free from encumbrances *517 executed or suffered,” it was intended to relieve the case of all embarrassment on the question of taxes. I am not prepared to admit this, although the point raised is close. The laws of Iowa imposed the taxes. Taylor was not consulted, but was passive in the matter, and was required to pay the taxes in order to protect the title held in trust, and it is not believed this clause in the decree concluded their adjustment.
I have given this case such examination as the pressure of business will admit, and have arrived at the conclusion that Taylor is entitled to relief. An appeal to the circuit court, which is allowed, will afford ample opportunity for the correction of any error.
A decree for a partition is granted, and the amount of taxes paid by Taylor, and only that, after he became the purchaser from the railway company, is allowed him, to be paid by the parties according to their respective interests in the lands.
A reference is ordered to the clerk, and the proper decree in conformity with this opinion will be entered, and the costs of the litigation shared by all parties.