*Boss & Barnefield,* for plaintiff.
*John Henshaw,* for defendant.

---

### MICHAEL SWEENEY *vs.* GEORGE H. BROW.

#### MAY 1, 1917.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1)  *Accounting.   Rents and Profits.    Rental Value.    Stenographer's Fees.   Costs.*

On a reference to a master to compute damages and take an account of crops cut and removed, and of rents and profits received by a respondent in a bill in equity for specific performance of a contract for the sale of real estate, complainant might properly inquire into the rents and profits and also into the rental value of the property, later exercising his right of election, as to the allowance of one or the other, and there was no abuse of the discretion of the court in charging the fees of the stenographer against the respondent for the entire inquiry.  .

(2)  *Accounting.   Interest.   Specific Performance.*

Complainant after bidding off property made the required advance payment.   He then procured the balance of the purchase money from a bank upon his note at 60 days, and afterwards the tender having been refused, used the money in taking up his note.   After decree for specific performance, on accounting, complainant was allowed the rental value of the property from the date of the tender to the date of entry of decree and also the interest at 5½% paid by him upon the note, and respondent claimed interest on the unpaid balance of the purchase price.

*Held,* that respondent was entitled to an allowance for the benefit accruing to complainant through the use of the money which he devoted to the payment of his note, from maturity of note to the entry of the decree, representing a saving of 5½% on the amount of the note.

*(3)   Specific Performance.   Interest.*

A vendee is discharged from the duty of paying interest by a tender of
the purchase price when it became due, and by an appropriation of the
required amount in such a manner and under such conditions as exclude
him from any benefit or advantage which might otherwise accrue to
him· therefrom.

*(4)   Specific Performance.   Taxes.   Insurance.*

Although the rule would appear to be that in the ordinary transactions
between landlord and tenant, expenses for taxes and insurance are
borne by· the landlord, except upon express agreement that they should
be chargeable to the tenant, yet where on an accounting after a decree
for specific performance of a contract for the sale of real estate, it
appears that the master intended to allow the complainant a net rental
value over and above the taxes and insurance paid by the respondent, the
finding will not be disturbed.

BILL IN EQUITY for specific performance.  Heard on re-
spondent's appeal from decree of Superior Court over-
ruling exceptions to report of master and appeal sus-
tained in part.

VINCENT, J.   The complainant brought a bill in equity
in the Superior Court of Newport County on August 11,
1911, for the specific performance of a contract for the
sale of certain real estate described therein and situated
in Tiverton in said county.  This court found that the
complainant was entitled to the relief prayed for, viz.:
The conveyance to him by the respondent of the real
estate in question in accordance with the terms of sale
and for an accounting for the rents, profits and crops cut
and removed from said estate subsequent to July 25, 1911.
The parties in interest were advised to, and did, present
to this court, for approval, a decree, and the case was re-
manded to the Superior Court for the entry thereof.
*Sweeney* v. *Brow,* 35 R. I. 227.  The decree was as
follows:

"FIRST:  That the respondent, George H. Brow, exe-
cute and ·deliver to the complainant, Michael Sweeney, a
warranty deed of the property purchased by the said

complainant and described in the first Paragraph of the Amended Bill of Complaint of said complainant, upon payment into the registry of this Court, by said complainant, of the sum of Eight Thousand Eight Hundred Twenty Dollars ($8,820), the balance of the purchase price of said property.

"SECOND: That the said complainant, Michael Sweeney, pay into the registry of this Court, on or before the 18th day of April, A. D. 1913, the sum of Eight Thousand Eight Hundred Twenty Dollars ($8,820), the balance of the purchase price of said property described in the bill of complaint as aforesaid.

"THIRD: That the said complainant is entitled to have from the respondent an account of all the crops cut and removed, rents and profits received by the said respondent of the said property, after the 25th day of July, A. D. 1911 to the date of the entry of this decree, and such damages as he may be found entitled to upon the reference hereinafter ordered.

"FOURTH: That this cause be referred to Hugh B. Baker, Esq., Master in Chancery, who, after hearing the parties, upon due notice thereof, shall compute the damages to which the complainant is entitled by reason of the default of the respondent, and shall return his finding thereon to this Court, and shall render to this Court an account of all the crops cut and removed, money, rents, profits received by the said respondent from the 25th day of July, A. D. 1911, to the date of the entry of this decree, and of the interest due to or from the parties to this cause on account of moneys retained or paid, and shall state the balance due upon said account, and the said Master in Chancery shall report the said account and the balance due thereon to this Court."

Upon the taking of the account the master found, and so reported to the court, that there was due the complainant, from the respondent, the sum of nineteen

hundred sixty-seven dollars and ten cents ($1967.10), this amount being made up as follows: The fair rental value of the farm from July 25, 1911, to the date of the entry of the decree, April 12, 1913, at the rate of $1000 per year, $1716.43; damages for the removal of a stone wall, $100; interest at six percent on $980, the amount of the deposit made by the complainant at the auction sale and retained by the respondent from July 25, 1911, to April 12, 1913, amounting to $101.42; and $49.01 for interest paid by the complainant on the sum of $8820 borrowed from the bank, on a note for sixty days, for the purpose of paying the purchase price of the premises, less the amount allowed by the bank on the deposit of said $8820 for fifty-six days, thus making the total of interest $150.43.

This report of the master was confirmed by the Superior Court except as to two items. The interest was reduced from $150.43 to $49.01 and the damages for the removal of the wall were reduced from $100 to $73. The item of interest was reduced by the amount of $101.42, which the complainant claimed to be due him on his deposit of $980. The amount of $100 allowed by the master for the removal of the wall was made up of two items, the cost of constructing a wall of 31½ rods at $2 per rod, and the cost of carting the stone at $27. The Superior Court reduced the amount to $73 on the ground that there was no testimony from which the amount which should be allowed for cartage could be determined.

From the decree of the Superior Court confirming the report of the master, as modified in the two particulars above mentioned, the respondent has taken an appeal, and he states the questions raised by such appeal as follows:

" FIRST: Was the Superior Court in error in failing to allow to the respondent interest at 6% per annum upon the balance of the purchase price which was not paid until after the decree of the court in this case, being

a period from the 25th day of July, A. D. 1911, to the 12th day of April, A. D. 1913?

" SECOND: Was the Superior Court in error in making any allowance to the complainant for damages by reason of the alleged action of the respondent in removing a stone wall?

" THIRD: Was the Superior Court in error in refusing to deduct from the sum allowed the complainant as the fair rental value of the farm the amounts of money paid by the respondent for taxes and insurance?

" FOURTH: Was the Superior Court in error in charging the whole of the stenographer's fees for the taking of testimony, against the respondent? "

The respondent claims that the Superior Court was in error in refusing to allow him interest on $8820, the balance of the purchase price of the farm, from July 25, 1911, to April 12, 1913, such interest amounting to $912.87. The complainant after bidding off the property made the required advance payment of $980. He then procured the balance of the purchase money of $8820 and tendered the same to the respondent on July 25, 1911, which was within twenty days from the time of sale as provided by the contract. The complainant attempted to make a second tender upon the last day of the period fixed for the completion of the sale, but was prevented from doing so, the respondent being out of town. The respondent refused to accept the money when tendered on July 25, 1911.

The complainant then filed his bill for a specific performance of the contract, and later, when ordered by the court to do so, paid into court the amount of such balance. The testimony presents no fact or circumstance which tends to show that the complainant was at any time in default respecting the performance of his part of the contract, but that on the contrary he was at all times ready,

willing and earnestly desirous of paying the balance of
the purchase price and consummating the transaction.

Taking up the several questions stated by the respond-
ent in his brief, we may first conveniently consider
whether the Superior Court was in error in charging the
respondent with the whole of the stenographer's fees for
taking testimony before the master.

The respondent, while admitting that, in equity, costs
are, as an elementary principle, entirely within the dis-
cretion of the court, contends that under the circum-
stances of the present case, he should be relieved from
the payment of a part of the stenographer's fees for the
reason that, in the first instance, the complainant con-
ducted a lengthy examination with a view to the recovery
of the value of the crops cut and removed from the land
by the respondent during the time which intervened be-
tween the sale and his acquirement of possession, and
that later the complainant, apparently becoming con-
vinced that no net profits had been made by the respond-
ent in the conduct of the farm, and that he would be un-
able to recover anything along that line, then shifted his
ground and introduced testimony showing the rental
value of the farm, for which he was subsequently allowed
to recover, such method of proceeding, on the part of the
complainant, resulting in a material increase of the
stenographer's fees.

The respondent admits, in his brief, that the complain-
ant is entitled either to rents and profits or to the fair
rental value of the premises. The contention of the re-
spondent then amounts to this, that the complainant hav-
ing elected to proceed for the recovery of rents and
profits by directing his examination to that end, and hav-
ing discovered through such examination that no profits
had accrued to the respondent through his conduct of the
farm, he is estopped from proving and recovering the
rental value. The respondent cites in support of the

position which he takes, *Taylor* v. *Taylor,* 43 N. Y. 578; *Worthington* v. *Hiss,* 70 Md. 172; *McLaughlin* v. *Barnum,* 31 Md. 425; and two other cases decided by the Supreme Court of North Dakota which seem to rest upon a particular statute of that State and are not therefore of value in the present discussion. Neither of the first three cases, *supra,* maintains the doctrine that a complainant vendee cannot show the rents and profits which the respondent vendor, who has retained possession of the premises, has received and also the rental value of the premises as well. To be sure the complainant is not entitled to an allowance of both rents and profits and rental value, and no such claim is made in the present case. If it be assumed that the complainant must make his election, the cases cited do not furnish any ground for saying that such election must be made prior to the taking of testimony before the master, and cannot be made afterwards. We see no reason why the complainant should not be permitted to inquire into the matter of rents and profits and also to offer testimony as to rental value, in the accounting before the master, later exercising his right of election by requesting the allowance of one or the other as he may see fit.

Equity does not put one to his election until he is in a position to see on which side his interest lies. It does not put a surprise on persons in this situation, but leaves them to decide after an opportunity to compare the value of their rights. *Dunlap* v. *Ingram,* 57 N. C. 178; *Young* v. *Hawkins,* 74 Ala. 370; 2 Story's Eq. Jur. (12th Ed.), § 1098.

The complainant in his inquiry as to rents and profits and his proofs as to rental value, was only pursuing different methods to reach the same result, and there is authority therefor in the very cases which the respondent cites. In *Taylor* v. *Taylor, supra,* the court said: "The defendant's intestate occupied the premises himself, and

the rents and profits were properly shown in the first instance, by proving the value of the use and occupation."
In *McLaughlin* v. *Barnum, supra,* the court said:
" Where there is occupation of a farm or land used only for agricultural purposes, and the income and profits are of necessity the produce of the soil, the owner may have an account of the proceeds of the crops or other products actually sold or raised thereon, deducting the expense of cultivation. There are necessarily rents and profits in such cases, but even there, it is more usual to arrive at the same result, by charging the occupier, as tenant, with a fair annual money-rent. But the proprietor of city lots, with improvements thereon, can only derive therefrom as owner, a fair occupation-rent for the purposes for which the premises are adapted. This constitutes the rents and profits in the legal sense of the terms of such property, and is all the owner can justly claim in this shape from the occupier. The accounting for rents and profits must therefore be upon the basis of a reasonable annual occupation-rent of the premises decreed to be sold."

In *Worthington* v. *Hiss, supra,* the court adopted the language above quoted from *McLaughlin* v. *Barnum* that " Where there is occupation of a farm or land used only for agricultural purposes, and the income and profits are of necessity the produce of the soil, the owner may have an account of the proceeds of the crops or other products actually sold or raised thereon, deducting the expense of cultivation. There are necessarily rents and profits in such cases, but even there, it is more usual to arrive at the same result, by charging the occupier, as tenant, with a fair annual money-rent."

In *Heinlen* v. *Martin et al.,* 53 Cal. 321, the bill prayed that the defendants be required to account for the value of the rents and profits of the premises during the time they were held by them, *&c.* The district court found the

amount of the rental value of the premises and decreed that the plaintiff secure the same from the defendants. On appeal to the Supreme Court, it was contended by the defendants that the rule that the plaintiff is entitled to an account of rents and profits only applies when the premises have been let at rent by the defendant, and when he has actually received rents as such, and has no application when the defendant has himself occupied the premises, and has received no rents. The action of the lower court in finding rental value and charging the defendants therewith was upheld notwithstanding the prayer of the bill was for rents and profits.

The respondent says, " In pursuing his attempt to recover the rents and profits actually earned, the complainant caused testimony to be taken which comprises two thirds of all the testimony taken in the case " and that " it is inequitable to allow the complainant to pursue a course which he knew might prove of no value to him rather than a course which would certainly give him results and to do it all at the expense of the respondent."

We do not think that the complainant could be expected to assume in advance that an accounting of rents and profits would prove of no value. Whether rents and profits had arisen to the respondent from his use and occupation was known only to him and there would be no basis upon which the complainant could make an election until the relative facts had been ascertained. We think it was reasonable for him to inquire into that matter with a view to ascertaining whether the respondent had been in receipt of rents and profits and if so to what extent. Besides an inquiry tending to show the productive capacity of the farm might aid the court in fixing its fair rental value although the party in possession may have failed to profitably conduct it. We see no abuse of the discretion of the court below in charging the stenographer's fees against the respondent.

(2) The master in his report allowed $100 to the complainant as damages for the removal of a stone wall by the respondent, during his occupation of the premises subsequent to July 25, 1911. This sum was made up of two items, the cost of rebuilding the wall and the cost of carting the materials required in such construction. As we have already seen, the trial court found that there was no evidence sufficient to sustain the charge for cartage, and the amount of $27 was deducted, leaving the damage on account of the wall at $73. The respondent contends that there is no evidence to support any claim for damages in the matter of the wall. An examination of the transcript of testimony convinces us that there is testimony upon which the conclusion of the trial court could be based and we cannot say that the award of damages in question was error.

We now come to the next, and perhaps more important, question raised by the respondent. Was the Superior Court in error in its refusal to allow interest to the respondent, upon the balance of the purchase price, from July 25, 1911, to April 12, 1913?

Had the complainant upon the refusal of his tender of $8820 on July 25, 1911, deposited the amount in the bank to the credit of the respondent, and had he notified the respondent that such deposit had been made, he would have been relieved from any charge for interest, by the great weight of authority. Such a deposit was not made, however, by this complainant. It appears from the testimony that the complainant, preparatory to making his tender, borrowed the required amount from a bank, upon his note at sixty days, and afterwards, the tender having been refused, used the money in taking up his note.

The complainant had the balance of the purchase money on July 25, 1911, when he made the tender and it was refused. There is no dispute as to the validity of such tender. The complainant also had the required

amount later, when he was ordered to, and did, deposit the same in the registry of the court. It cannot be assumed, under the circumstances of the case, that the complainant would have been unable to raise or unwilling to appropriate the required sum to the payment of the balance due, at any other time, had he been able to discover any change of attitude on the part of the respondent indicating a willingness to accept it and close the transaction. The general rule regarding interest is concisely stated in 15 R. C. L. 33, as follows: '' Where a debtor is really and *bona fide* ready to make payment and intends to do so, but is prevented from so doing by the act or omission of his creditor, the latter will not be entitled to interest. A tender by the debtor of the amount of his debt, if made in the proper manner, will suspend the running of interest on the debt from the time of such tender.''

The master refused to allow interest to the respondent on the unpaid balance of the purchase price, and stated his reasons therefor in the following language, which now bears the approval of the trial court: '' The amount of $912.87 claimed by the respondent as interest at six per cent per annum between the dates in question on $8820 is not allowed. It appears that on July 25, A. D. 1911, the said complainant tendered the said sum of $8820 to the respondent, as the balance of the purchase price of the premises in question, and the said respondent refused to receive said sum. According to the authorities it does not seem . . . that said respondent under said circumstances is entitled to any interest on said sum.''

The Superior Court, in its affirmance of the master's report in this regard, seems to stand upon the case of Bright v. James, 35 R. I. 492, in which the court said that the respondents '' ought not to be permitted to charge the complainant with interest upon money which they refused to receive, when offered to them, and during a

period when he was trying to force it upon them and they were resisting performance.''

The correctness of the law as thus declared by this court in *Bright* v. *James* cannot be doubted, but is that case sufficiently similar in its circumstances to make it applicable to the case at bar? It must be remembered that the complainant has claimed and has been allowed the rental value of the farm from July 25, 1911, the time of the tender, to April 12, 1913, the date of the entry of the decree, a circumstance which affects the relative position of the parties and tends to distinguish the case at bar from that of *Bright* v. *James.*

The respondent contends that he should be allowed interest on $8820, the balance of the purchase money, and that such allowance is correlative to the allowance made to the complainant covering the fair rental value of the farm. There seems to be much authority in support of this contention. The principle which appears to be established by many of the adjudicated cases is, that from the time when the conveyance ought to be made the vendor must be treated as a trustee of the property for the benefit of the purchaser, and the purchaser must be treated as a trustee of the purchase money for the benefit of the vendor.

In *Eastman* v. *Simpson,* 139 Mass. 348, the court said: '' For the purposes of accounting, the plaintiffs are treated as having owned the land from the date of the tender. But, as they are only entitled to the land on payment, it follows that they must account for the money from the same date.''

In *Marx* v. *Oliver,* 246 Ill. 316, the court said: '' Appellee insists that the court erred in requiring him to pay interest on the $18,000 from the 26th day of November until the money was paid into court for appellant's use. We do not think there was any error in this ruling. Appellant was required to account for rents upon the build-

ing from the day the transaction should have been closed. The theory of the decree is that appellee was entitled to the building and appellant to the purchase money on the day that the transaction should have been closed. Under this view appellant was entitled to interest on the $18,000 and appellee was entitled to the income from the property.''

In *Bostwick* v. *Beach,* 103 N. Y. 414, the court said: '' The only remaining questions are those which relate to the rents and profits from the time when the purchaser became entitled to his deed. There can be but little controversy about the ordinary rules for the determination of these questions. Where the purchaser is ready and willing to perform, and the delay is on the part of the vendor, the purchaser is entitled to the rents and profits from the time when, according to the terms of the contract, possession should have been delivered, or, if the vendor has·remained in possession he is chargeable with the value of the use and occupation from·the same period, and the purchaser is chargeable with interest on the purchase money if it has remained in his hands unappropriated. But where it has been appropriated, and notice thereof given to the vendor, and the purchaser has received no interest thereon, he is not liable to pay interest ·to the vendor.''

See, also, *Pillsbury* v. *Streeter,* 15 N. D. 174; *Ferguson* v. *Epperly,* 127 Iowa, 214; *Jersey City* v. *Flynn,* 74 N. J. Eq. 104; *Baxter* v. *Brand,* 6 Dana, 296; *Noyes* v. *Bragg,* 107 N. E. 669 (Mass.); *Bear* v. *Fletcher,* 252 Ill. 206; *Lynch* v. *Wright,* 94 Fed. 703; *Abrahamson* v. *Lamberson,* 68 Minn. 454; *Covell* v. *Cole,* 16 Mich. 223; 39 Cyc. 1571; 39 Cyc. 1630.

The respondent sets forth in his brief that the Superior Court has erroneously approved the finding of the master, that the complainant is excused from the payment of interest on the balance of the purchase money because he

made a tender thereof which was refused, and that the master overlooked the fact that such tender could only relieve a purchaser from the payment of interest where it was kept good, the money remaining continuously appropriated to the performance of the contract, and the complainant having no use of or advantage from it in the meantime. In this connection the respondent quotes as follows from 36 Cyc. 755: '' The vendee is discharged (3) from the duty of paying interest by a tender of the purchase money when it became due and a continuous readiness to pay it since . . . '' This seems to have been relied upon by the Superior Court in its rescript.

As we understand it, '' a continuous readiness to pay '' means something more than a mere mental attitude amounting to a desire or willingness to pay should an opportunity be afforded to do so. It means setting aside or appropriating the required amount in such a manner and under such conditions as would exclude.the vendee from any benefit or advantage which might otherwise accrue to him therefrom. The cases cited in 36 Cyc. 755 in support of the above quotation sustain this view. *Bass & Carter* v. *Gilliland's Heirs*, 5 Ala. 761; *Bostwick* v. *Beach,* 105 N. Y. 661; *Worrall* v. *Munn*, 38 N. Y. 137.

The complainant in the case at bar in claiming the rental value of the farm from July 25, 1911, the date when the tender was made and the sale should have been consummated, must have proceeded upon the assumption, as he had a right to do, that he became the owner of the property on that date and was accordingly entitled to a fair and reasonable compensation for its use during the period of its detention by the respondent.

For a vendee to have the use and occupation of the premises and at the same time be absolved from the payment of interest on the balance of the purchase price seems to be regarded as inequitable by many authorities. The complainant here did not have actual possession of

the farm, but he has now been allowed its rental value covering the period during which he should have had such possession. In other words he receives the equivalent of such possession and has thus been placed in the same position, in contemplation of law, as if he had been in actual possession and enjoyment of the premises from July 25, 1911, to April 12, 1913.

The complainant borrowed from the bank the amount of $10,000 on his note at sixty days, which sum included the $8820 which he tendered to the respondent in payment of the balance of the purchase price of the farm. Later he used this sum of $8820 in taking up the note. The interest at 5½%, paid by the complainant to the bank upon that portion of the note represented by the tender and amounting to $49.01, has been credited to him in the account.

Upon the maturity of his note the complainant relieved himself from further liability to pay interest on the $8820 by the use of that sum as before mentioned. That is to say, he thus effected a saving of 5½% on that amount from the maturity of his note to the entry of the decree on April 12, 1913, when he was ordered to pay the balance of the purchase price into the registry of the court.

We think that the respondent is entitled to an allowance for the benefit or advantage accruing to the complainant through the use of the money which he devoted to the payment of his note from the maturity of the note on September 22, 1911, to the entry of the decree on April 12, 1913. This saving or advantage to the complainant amounts to $754.60, being 5½% on $8820, covering the period between the last-mentioned dates.

(4)　The remaining contention of the respondent is that he should be allowed the several amounts paid out by him for taxes and insurance during his occupation of the farm subsequent to July 25, 1911. There is some testimony tending to show that in the ordinary transactions between

landlord and tenant, expenses for taxes and insurance are borne by the landlord and are not chargeable to the tenant, except upon an express agreement to that effect, and there is substantial authority in support of such a proposition. *Davis* v. *Parker,* 14 Allen 94; *Seven Mile Beach Co.* v. *Dolley,* 71 N. J. Eq. 770; *Watson* v. *Sawyers,* 54 Miss. 64; *Sherman* v. *Savery,* 2 Fed. 505.

The complainant does not attempt to dispute the testimony or to controvert the authorities above referred to, but he claims that the rental value as fixed by the master is a net rental value obtained after deducting taxes and insurance. One of the experts, called by the complainant, expresses the opinion that a fair rental value would be from $1000 to $1200 a year and that he should want $1200 for it if he were going to rent it. Another expert witness, also called by the complainant, fixes the fair rental value at $1100 for farming purposes, and at $1500 if occupied as a summer home. While the report of the master does not contain any express statement to the effect that the amount of $1000 per year is fixed by him as a net rental value, we think that the more reasonable conclusion is, in view of the testimony, that the master intended to allow the complainant a rental value of $1000 over and above the taxes and insurance paid by the respondent. This view was taken by the trial court in the confirmation of the master's report and we cannot say that it was wrong.

To state the result of our conclusions more specifically, the total amount allowed to the complainant by the master was $1,967.10. This amount was reduced by the trial court to the extent of $27 in the matter of the removal of the stone wall and $101.42 for interest improperly allowed on the sum of $980, being the deposit made by the complainant at the time of the sale, thus bringing the allowance to the complainant down to $1,838.68. From this last-mentioned sum there must be a further

deduction of $754.60 for interest on $8820, the unpaid balance of the purchase price, thus leaving $1,084.08 the final net amount of the allowance in favor of the complainant.

In so far as the decree of the Superior Court overrules the respondent's exceptions 24, 25 and 34 to the master's report, the respondent's appeal is sustained and such decree is reversed. In all other respects said decree is affirmed.

The parties may present to this court, for approval, a decree in accordance with this opinion.

*Sheffield & Harvey,* for complainant.
*Waterman & Greenlaw,* for respondent.