[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an action for specific performance heard by the court sitting without a jury. The buyer brought suit to compel specific performance of a contract entered into between him and the sellers to convey to him the subject property. Decision is here rendered in accordance with R.C.P. 52.
FACTS AND TRAVEL
On October 25, 1985, Peter Sclafani (hereinafter "plaintiff") entered into a purchase and sale agreement with Glen Gama and Christine Gama (hereinafter "defendant").[1] Plaintiff agreed to buy and defendant agreed to sell a multi-family dwelling located at 22 Lisbon Street, Providence, Rhode Island. The agreement was recorded three and one half months later on February 11, 1986. According to the agreement, the parties agreed to a purchase price of forty-eight thousand ($48,000) dollars with a five hundred ($500) dollar deposit. (Joint Exhibit #2). Plaintiff would pay the remaining forty seven thousand five hundred ($47,500) dollars upon the delivery of the deed; said delivery set for December 21, 1985. Both plaintiff and defendant testified that all dealings were conducted through defendant's broker, Mr. Conti. The purchase and sale agreement also included three "contingencies." The first, entitled "Mortgage Contingency," provided that:
 [I]t is expressly agreed notwithstanding any other agreement, that this Agreement is subject to the Buyer's ability to obtain a mortgage commitment with an institution first mortgage lender of at least $43,200.00 for a minimum period of 25 years at a rate not in excess of 12% and a maximum of 3 points.
Furthermore, the agreement provided that if the plaintiff was unable to obtain said financing and advised defendant or Mr. Conti of same in writing on or before November 30, 1985, then he would be relieved of his obligation to purchase the property and could receive back his deposit. Without such notice, plaintiff would be obligated to perform under the agreement.
The second and third provisions, included as "Additional Provisions," stated that the purchase is
 (1) Contingent on a woodboring insect inspection of said property at buyer's expense.
 (2) 210 Electric. 100 Amp. with three meters and three circuit breakers at seller's expense.
With respect to the latter two provisions, the parties subsequently failed to perform their respective obligations prior to the closing date on December 21, 1985. This closing in fact never took place. In addition, plaintiff applied for a mortgage in October, 1985 with the Commonwealth Mortgage Company. Plaintiff's application was still pending as of November 30, 1985, at which time no notice of approval had yet been sent to defendant.
On February 7, 1986, defendant's attorney sent a letter to plaintiff declaring the purchase and sale agreement null and void by its own terms because the closing never took place, and thus relieving defendant of any obligation to sell the property. On February 8, 1986, plaintiff by letter advised defendant of an extended closing date which was agreed upon by plaintiff and Mr. Conti. The new closing date was extended to February 10, 1986. On the above date plaintiff attended but defendant and Mr. Conti failed to appear. (Joint Exhibit #5).
On January 13, 1988, plaintiff filed a complaint seeking specific performance and/or damages for defendants' breach of contract resulting from defendants' nonperformance of the electric upgrading and lack of cooperation with the insect inspection. Plaintiff's claim for specific performance was heard by this court in March, 1992 and decision thereon was reserved.
Plaintiff contends that defendant breached the purchase and sale agreement by refusing to perform the expressed contingencies. Plaintiff asserts these provisions were conditions precedent and therefore had to be satisfied before plaintiff had a duty to perform. Further, plaintiff states he was ready, willing and able, at all times, to comply with the terms of the contract. Thus, plaintiff argues that specific performance should be granted.
Defendant contends that plaintiff was not ready, willing, and able to perform on the closing dates because he, defendant, received no notification of plaintiff's mortgage approval. In addition, defendant asserts that plaintiff breached the contract for failure to close on the specified date, thus rendering the agreement null and void. Moreover, defendant contends the doctrine of laches bars this suit because plaintiff's unexplained and inexcusable twenty-three (23) month delay in commencing this suit has prejudiced the defendant.
Specific performance is an equitable remedy well-suited to actions involving real property given the presumption that land is unique. O'Halloran v. Oeschslie, 402 A.2d 67, 70 (Me. 1979). In fact, so strong is this presumption that ". . . a justice may assume the inadequacy of money damages in a contract for the sale of real estate and order specific performance of the contract without an actual showing of the singular character of the realty." Id. Case law consistently reaffirms that the equitable remedy of specific performance lies within the discretion of the trial justice. Gaglione v. Cardi, 120 R.I. 534, 540,388 A.2d 361, 364 (1978); see also Griffin v. Zapata, 570 A.2d 659 (R.I. 1990); Eastern Motor Inns v. Ricci, 565 A.2d 1265 (R.I. 1989).
The complainant seeking specific performance has the burden of showing that he or she is ready, willing and able to purchase the property, even when the seller refuses to participate in or attend the closing or even to satisfy a condition of the contract. Romaniello v. Pensiero, 571 A.2d 145 (Conn. App. 1990); Frumento v. Messanotte, 473 A.2d 1193, 1196 (Conn. 1984); Jakober v. E.M. Loew's Capitol Theatre, Inc.,107 R.I. 104, 114, 265 A.2d 429, 435 (1970). In an action for specific performance, it is plaintiff's burden to prove that he was ready, willing and able to purchase the property. Id. Furthermore, "plaintiff's unwillingness to perform does not make the remedy of specific performance unavailable to [him] where their unwillingness is the result of the defendant's failure to fulfill a condition precedent." Sink v. Meadow Wood Country Estates,559 A.2d 725 (Conn. App. 1989); see also, 5 AA. Corbin,Contracts (1964) § 1175 pp. 308-309.
In the case at bar, the plaintiff testified that he was at all times ready, willing, and able to perform the contract. On several occasions, plaintiff contacted Mr. Conti in hopes of setting an inspection date, and further to check the electrical improvements. Plaintiff's efforts were met with unresponsiveness. Defendant's argument that plaintiff was not prepared to close is without merit, since defendant's inaction directly impeded the closing from taking place.
In regard to the mortgage contingency, defendant contends that plaintiff's failure to notify him of the mortgage approval demonstrates plaintiff's inability and unwillingness to perform the agreement. However, the language of the agreement is clear: defendant was entitled to notification only if financing were not approved. (Joint Exhibit 2). Therefore, silence on behalf of the plaintiff indicated that plaintiff "shall be bound to perform his obligation under the contract." (Joint Exhibit 2). Since defendant received no notice by November 30, 1985, because the application was still being considered, the mortgage contingency was not at issue. Thus, this court is satisfied that plaintiff was at all times ready, willing and able to comply with the agreement.
In regard to conditions precedent, where a contractual duty is subject to a condition precedent, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused. LaurelRace Course, Inc., v. Regal Const. Co., Inc., 333 A.2d 319,274 Md. 142 (1975). Some examples of conditions precedent found in purchase and sale agreements are mortgage contingencies, Loda v.H.K. Sargeant and Assoc., Inc., 448 A.2d 812 (Conn. 1982), building repairs performed by the seller, Sink at 728 (Conn. App. 1989), and all other clear and unambiguous provisions that the parties intend to be conditions precedent. Durapin, Inc. v.American Products, Inc., 559 A.2d 1051 (R.I. 1989). Therefore, the provisions in the case at bar certainly qualify as conditions precedent. In interpreting an agreement, no particular form of wording is necessary to create a condition precedent.Chirichella v. Erwin, 310 A.2d 555, 270 Md. 178 (1973). Clear and unambiguous language in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions. Durapin, Inc., at 1051;Elias v. Young-Ken, 473 A.2d 158, 163 (R.I. 1985); Dudzik v.Leesona Corp., 473 A.2d 762, 765 (R.I. 1984).
In the instant contract, the language is quite definite. By the use of the phrase "contingent on" the parties clearly intended the woodboring insect inspection and the electric upgrading be completed prior to delivery of the deed. (Joint Exhibit #2). An examination of the contract language as well as the pattern of the parties' behavior reveals that said provisions constituted conditions precedent which had to be satisfied before the parties were obligated to perform.
Further, where the cooperation of a promisee is necessary for the performance of a promise, there is an implied condition that the cooperation will be given. James Julian, Inc. v. StateHighway Admin., 492 A.2d 308 (Md. App. 1985); Griffith v.Scheungrab, 146 A.2d 864, 219 Md. 27 (1958). With respect to the insect inspection, cooperation on the part of the defendant was integral to the satisfaction of the condition. Plaintiff's testimony indicates that after numerous phone calls with Mr. Conti no date was ever established by defendant. This inaction by defendant and/or defendant's representative resulted in the breach of an implied condition precedent to cooperate, and thus relieved plaintiff of his duty to perform by participating in the closing.
In regard to the electrical improvements, where a seller in a contract for the sale of land agrees to make repairs on a building, the seller is required to make repairs before buyer is obligated to accept the deed and make payments. Sink at 728; also see Annot. 104 A.L.R. 1062. The evidence indicates that Mr. Conti told plaintiff during a phone conversation that the electrical upgrading was "in the works," when, by defendant's own testimony no improvements had begun. Further, defendant concedes he did not perform the upgrading until September, 1986, well after the established closing date. Thus, defendant's failure to satisfy the above condition precedent resulted in a breach of contract relieving plaintiff of his obligation to perform. In light of plaintiff being ready, willing and able to perform, this court grants plaintiff's request for specific performance.
It must be noted that plaintiff was a most credible and persuasive witness. Mr. Conti, with whom defendant listed the property, appears to have been ineffectual at best and, ultimately for defendant, a hindrance. Conti's performance, or lack thereof, has fatally undermined defendant's case.
Finally, the defendant claims the doctrine of laches bars plaintiff's equitable claim for specific performance. Laches is negligence to assert a known right, seasonably coupled with prejudice to an adverse party. Rodrigues v. Santos,466 A.2d 306 (R.I. 1983); Lombardi v. Lombardi, 90 R.I. 205, 209,156 A.2d 911, 913 (1959). In addition, laches is an affirmative defense that must be set forth in a defendant's pleading. Rule 8(C) R.C.P. Failure to plead such an affirmative defense results in its waiver. Duquette v. Godbout, 416 A.2d 669 (R.I. 1980).
In the present case, the defendant failed to assert the affirmative defense of laches. Accordingly, the doctrine of laches does not prohibit this court from granting plaintiff's request for specific performance.
Lastly, plaintiff requests a grant of damages in addition to a grant for specific performance. The Rhode Island Supreme Court has long followed the rule that a purchaser seeking specific performance, where the seller defaulted and retained possession may also elect to claim rents and profits of the property during delay. Bissonnette v. Hanton City Realty Corp., 529 A.2d 139
(R.I. 1987); Sweeney v. Brow, 40 R.I. 281, 100 A. 593 (1917). As a balance of equities, the Supreme Court further held that the seller is entitled to deduct the interest on the unpaid purchase money. Id. Expenses properly incurred by seller for improvements can also be deducted. Annot. 7 A.L.R.2d 1204, 1212 (1949).
Defendant testified that gross rental income of fifty nine thousand one hundred and forty five ($59,145) dollars was received from February 10, 1986 to March 13, 1992, the trial date. Defendant incurred eight thousand five hundred ($8,500) dollars in expenses. This amount reduces the gross rental income to fifty thousand six hundred and forty five ($50,645) dollars. The interest on the balance of the purchase price ($47,500) from February 10, 1986 to March 13, 1992, at an annual rate of 12%, equals thirty four thousand six hundred and seventy-five ($34,675.00) dollars. After crediting the defendant with the above interest, this court awards plaintiff fifteen thousand nine hundred and seventy ($15,970) dollars in damages.
For the reasons herein above set out, the court grants plaintiff's request for specific performance. In addition, plaintiff's request for damages is granted in the amount of fifteen thousand nine hundred and seventy ($15,970) dollars.
Counsel shall prepare an appropriate order for entry.
[1] Christine Gama was never served with a summons and is therefore not a party in this proceeding.