GRENVILLE T. SNELLING ET AL. *vs.* WILLIAM J. MERRITT
ET ALS.

Third Judicial District, Bridgeport, October Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and GAGER, Js.

A bond given by two defendants to release an attachment required the payment of any judgment that might be recovered against them "or either of them," or, in default thereof, the payment of the value of the interest of the defendants "or either of them" in the attached property. *Held* that such bond secured a judgment obtained by the plaintiffs, although the particular defendant against whom it was rendered had no interest in the property attached.

The reformation of an instrument as prayed for in a cross-complaint, relates back to the institution of the action, and so obviates objections to the answer, raised by demurrer, which, before reformation, were apparently well taken.

A cross-complaint alleging that the parties made an agreement for a bond which should secure the judgment only in case it was rendered against a defendant having an interest in the property attached, and that through mutual mistake the bond as executed secured the judgment at all events, and praying for its reformation accordingly, is not demurrable.

A cause of action for reformation upon the ground of mutual mistake requires no allegation of fraud.

Where reformation of the instrument sued upon is asked for in a cross-complaint, it is not necessary to allege a previous demand for reformation, since the parties are already in court, the plaintiff seeking to take advantage of the alleged mistake, and the cross-complaint is merely a defensive proceeding.

Failure to file a cross-complaint for the reformation of a written instrument for several weeks after learning of the mistake in it, is not necessarily and as matter of law laches.

An unsuccessful attempt to raise the question of laches by demurrer does not preclude the party from raising it upon the trial, when all the facts affecting it will be before the court.

A court is not bound to expunge an argumentative denial, but may do so upon motion or of its own accord.

In a proceeding to reform a bond, evidence of the unexpressed intention of the party's attorney when drawing the bond is inadmissible.

Evidence of the understanding and belief of the parties as to the legal effect of a bond sought to be reformed, may be admissible under an allegation of mutual mistake.

Where a party to a bond has a correct belief as to its legal effect, it is immaterial that he also believes that it has the same effect as a statutory bond which in fact has a different effect, the point at issue being what he believes as to the effect of the bond in question—not his belief as to the effect of a different bond.

The measure of the liability of an obligor in a statutory bond given to dissolve an attachment (General Statutes, § 853) is the value of the interest in the attached property of the defendant against whom judgment is rendered.

In order to warrant the reformation of a contract on the ground of mutual mistake, the mistake must have been common to both parties, and by reason of it both must have done what neither intended; and the evidence of this should be clear, substantial and convincing.

The mistake of one party may under some circumstances be ground for the cancellation of a contract, but it cannot be ground for a reformation.

Argued October 27th—decided December 19th, 1911.

ACTION against the obligors of a bond given to dissolve an attachment, brought to the Superior Court in Fairfield County where the bond sued upon was reformed (*Williams, J.*) pursuant to the prayer of the defendants' cross-complaint, and judgment was afterward rendered in their favor (*Shumway, J.*), from which

the plaintiffs appealed. *Error, judgment set aside and new trial ordered on demurrer to answer.*

The bond upon which the action is brought is a joint and several bond for $5,000, signed by William J. Merritt and Lucius R. Merritt as principals and by the other three defendants as sureties. The condition of the bond is: "The condition of this obligation is such, that whereas the estate of said William J. Merritt and Lucius R. Merritt has been attached by said Snelling & Potter by process directing an attachment to the value of five thousand ($5,000) dollars, dated July 16th, 1906, and returnable to the Superior Court for Fairfield County, on the first Tuesday of September, 1906, as appears by the officer's return on said process.

"Now, therefore, if said William J. Merritt and Lucius R. Merritt, or either of them, shall pay *any* judgment that may be recovered against them *or either of them* in such suit, or, if in default of such payment, we, the said obligors, shall pay to the officer having the execution issued on said judgment, on demand, the actual value of the interest of said William J. Merritt and Lucius R. Merritt, or either of them, as the case may be, in said attached property at the time of said attachment, not exceeding the amount of this bond then this bond shall be void, otherwise to remain in full force and effect."

The action in which the attachment, referred to in the condition of the bond, was made, resulted in a judgment in favor of the plaintiffs for $3,543 and costs against William J. Merritt, and a judgment in favor of the defendant Lucius R. Merritt. It is found by the court that at the time the attachment was made William J. Merritt had no interest in the property attached, and that it was then owned by Lucius R. Merritt.

The Superior Court, upon the motion to expunge portions of the complaint above referred to, ruled in

effect that the defendants were holden upon the bond to pay to the plaintiffs the actual value of the interest of Lucius R. Merritt, as well as of William J. Merritt, in the land attached at the time of its attachment, not exceeding the amount of the judgment. No appeal was taken from this ruling.

The defendants afterward filed a cross-complaint asking for a reformation of the bond. The essential allegations of the cross-complaint are substantially these:—

"On or about the first day of April, 1909, the defendant, Lucius R. Merritt, desiring to make sale of said attached premises, by his attorneys, entered into negotiation with the attorneys for the plaintiffs in said action for a release of the aforesaid attachment on said premises, by giving a bond in substitution for said attachment. . . .

"It was agreed by and between the attorneys . . . that said attachment should be released by the plaintiffs upon the giving of a bond to them with surety or sureties, conditioned that the penalty thereof or so much of the same as might be necessary should be paid to the plaintiffs in case that they should obtain any judgment whereby said attached premises would (had the same remained subject to said attachment) be held to respond to said judgment."

In furtherance of said agreement, the attorneys for said Lucius R. Merritt prepared and submitted to the attorneys of the plaintiffs, a bond by them proposed to effect the purpose set forth in paragraph four, which said bond was approved by the plaintiffs' attorney and was executed, and is the bond in suit.

"The attorneys for said Lucius R. Merritt, at the time of the giving of said bond, believed the meaning of the condition of the same to be that said bond should be void if the obligors therein should pay to the officer

having the execution which should be issued upon any judgment that might be recovered against said William J. Merritt or Lucius R. Merritt, the actual value of the interest of said William J. Merritt in said attached property at the time of the attachment, in case judgment were rendered against said William J. Merritt; or should pay to such officer having such execution the actual value of the interest of said Lucius R. Merritt in said attached property at the time of the attachment, in case judgment were rendered against him; or should pay to such officer having such execution the actual value of the interest of both said William J. Merritt and Lucius R. Merritt in said attached property at the time of the attachment, in case judgment were rendered against both of them; which was, in effect, that they should be holden to respond to such judgment only to the same extent and manner as the interest in said land of the defendants in said action was holden by said attachment."

The plaintiffs and their attorney believed and understood that the meaning of the bond was as set forth in said paragraph eight hereof, and that the plaintiffs could not, under said bond, require the payment of the actual value of the interest in said attached property of a defendant against whom no judgment should be rendered in said suit.

The plaintiffs and their said attorney well knew that the said obligors so believed and understood the meaning of said bond to be as set forth in paragraph eight hereof.

At the time of the giving of said bond the obligors believed that the plaintiffs and their attorney had the same understanding of the effect and legal consequences of said bond as existed in the mind of the obligors, and the plaintiffs' attorney well knew of such belief on the part of the obligors.

"The said obligors acted upon said belief as set forth in paragraph twelve in the execution by them of said bond, and except for such belief, they would not have executed the same."

The court, after a hearing upon a substantial denial of all these allegations, found that prior to the execution of the bond the attorneys of the respective parties entered into negotiations for the "release and dissolution of said attachment upon the substitution of a bond in lieu thereof, substantially such in form and legal effect as, under the circumstances, ought to be ordered in the premises by a judge of this court, upon a proper application therefor, under and pursuant to the statute in such case made and provided "; and that as the result of the negotiations it was agreed in behalf of the plaintiffs and defendants, acting through their attorneys, that upon the execution and delivery of "a bond, payable to the plaintiffs, or to their representatives, or assigns, in the penal sum of $5,000, substantially such in form and legal effect as, under the circumstances, ought to be so ordered in the premises by a judge of this court, upon proper application, as aforesaid; and be so conditioned that if said William J. Merritt, or said Lucius Merritt, defendants in said first action, should pay any judgment which might be recovered against both of them in said action, or on default of such payment said obligors should pay to the officer having the execution issued on such judgment, on demand, the actual value of the interest of either or both of said defendants in the property attached at the time of said attachment, not exceeding the amount of said bond, or in case judgment should be recovered in said first action against one only of said two defendants in said first action, and said defendants, or either of them, should pay such judgment, not exceeding the amount of this bond, or in default of such payment;

said obligors should pay to the officer having the execution issued on such judgment, on demand, the actual value of the interest of the said defendant against whom only such judgment should be so recovered as aforesaid, in the attached property at the time of said attachment, not exceeding the amount of such bond, as aforesaid, then such bond should be void, but otherwise in full force and effect, that the said attachment should thereupon be released and dissolved."

It is found that the bond in suit was afterward prepared by the defendants' attorney assisted by the plaintiffs' attorney, and executed and delivered; that at the time of its execution and delivery it was mutually understood and believed by all the obligors and by the plaintiffs' attorneys that it was such in form and legal effect as under the circumstances ought to be ordered by a judge of the Superior Court upon application, and drawn, prepared and conditioned so as to be in all respects fully adapted to and in accord with the agreement of the parties; but that through a mutual mistake of the attorneys of the parties as to the legal effect and meaning of the provisions and contents of the bond, it was not such in form and legal effect as under the circumstances a judge of the Superior Court ought to order in the premises, and not so conditioned as to accord with the agreement. The court thereupon, by an interlocutory judgment, reformed the bond to conform to the agreement which it found the parties had made, and later overruled a demurrer to the answer, and rendered a final judgment for the defendants.

Upon the trial the defendants' attorney, who was also a surety upon the bond, testified, against the objection of the plaintiffs, that in drawing the bond in suit he intended to have it express the idea that "the obligors were liable the same as the land was liable." The same witness, and other signers of the bond, also

testified, against the plaintiffs' objection, what was their understanding and belief as to the legal effect of the bond.

Other facts necessary to an understanding of the case sufficiently appear in the opinion.

*Stiles Judson* and *John Keogh*, for the appellants (plaintiffs).

*John E. Keeler* and *Frederick W. Huxford*, for the appellees (defendants).

THAYER, J. The demurrer to the answer was properly overruled. It was not argued or decided until after the bond, which is made a part of the complaint, had been reformed, although both the answer and the demurrer to it were filed prior to the filing of the cross-complaint. The reformation of the bond related back to the institution of the action and made the bond such as the defendants claimed it to be at the time the answer was filed. This change in the bond obviated the objections raised to the answer. As the pleadings stood prior to the reformation of the bond, the demurrer was sustainable upon several of the grounds stated in it.

The demurrer to the counterclaim was also properly overruled. The counterclaim sufficiently alleges that the parties made an agreement for the release of the attachment upon the giving of a bond conditioned for the payment of the penalty upon the plaintiffs obtaining a judgment whereby the attached property, had it remained subject to the attachment, would have been held to respond to the judgment, and the delivery and acceptance, through the mutual mistake of the attorneys of the parties, of a different bond. The "basis of the counterclaim" does not rest solely upon the unexpressed belief and understanding of the attorneys

for the defendants, as the plaintiffs contend, but it rests also upon the agreement alleged to have been made prior to the execution and delivery of the bond. The defendants were bound to show the prior agreement that the bond delivered was not in accordance with the agreement, and that by the mutual mistake of the parties or their attorneys the bond was delivered and accepted as conforming to the agreement. The allegations as to the belief and understanding of the attorneys are in support of the latter proposition only.

As to the other grounds of demurrer to the counter-claim it is sufficient to say: (1) That as a cause of action upon the ground of mutual mistake is sufficiently alleged, an allegation of fraud was unnecessary. (2) That as it appears that the plaintiffs were prosecuting an action upon the bond, it was unnecessary, in a cross-complaint filed in such action asking for a reformation of the bond, to allege that a demand for its reformation had been made. The parties were in court. The cross-complaint was merely a defensive proceeding. The equity which required that before a party is brought into court in an action to reform a contract, demand for such reformation shall be made, does not exist where such party is already in court seeking to take advantage of the mistake. Where demand is made upon him before suit is brought, his refusal to correct the mistake is evidence of his intention to take advantage of it. Suit actually brought to enforce the unreformed contract is also evidence of such intention. (3) It appears in the cross-complaint that the defendants had no apprehension of the alleged mistake in the bond until the ruling of the Superior Court on the motion to expunge. This was on January 14th, 1910. The cross-complaint was filed on March 22d, 1910. It cannot be said as matter of law that this shows laches as claimed in one ground of demurrer. "Courts of equity do not

impute laches by an iron rule." *Waterman* v. *Sprague Mfg. Co.*, 55 Conn. 554, 574, 12 Atl. 240. By the overruling of this ground of demurrer the plaintiffs were not precluded from raising the question of laches upon the trial, when all the facts could be brought before the court.

The remaining grounds of demurrer to the cross-complaint need not be noticed, as they were not pressed in the brief or argument of counsel. They were properly overruled, as was also the motion to expunge portions of the cross-complaint, which was based largely upon the same grounds as the demurrer.

It was not error to deny the plaintiffs' motion to expunge a portion of the answer. The portion objected to was an argumentative denial of the portion of the complaint to which it referred, and was therefore improper in form. The court was not bound to expunge it, but upon its own motion, or upon the plaintiffs', it might have done so and ordered a formal denial. The plaintiffs would have been entitled to such a change upon a proper motion.

The evidence of the defendants' attorney as to his intention when drawing the bond should have been excluded. He had already testified that he had previously, without consultation with the plaintiffs or their attorneys, drawn up a bond which he requested them to accept, and which they had refused to accept unless certain changes were made in it to which he had agreed. The bond in suit is the same as the original bond with those changes incorporated. The evidence did not tend to show that he used different language than he then intended, but that, apart from the language used, he had a certain intent in drawing the bond. His intention to make the obligors in the bond liable the same as the land was liable, could not affect the agreement which he had already made with the plain-

tiffs, and it was not admissible to show a modification of that agreement unless it appeared that the plaintiffs knew of the intention and agreed to the modification, and accepted it as embodying the agreement as so modified. There is no evidence that the plaintiffs had any notice of the intention, or that it was sought to modify the agreement, the terms of which were fixed.

The other evidence which is objected to was properly received. It supported the allegation that the parties believed when they signed the bond that its legal effect conformed with the agreement previously made. The allegation being that the real agreement between the parties was for a different bond than that which is in suit, it was competent to show that at the time the bond was executed and delivered the signers understood and believed that it expressed the agreement which they claimed was in fact made, for the purpose of showing that through mistake they had signed a different bond than they intended.

The Superior Court ruled that the bond in suit, as originally executed and delivered, bound the defendants to pay the amount of any judgment which might be rendered against the Merritts or either of them in the attachment suit, to the value of their interest, or the interest of either of them, as the case might be, in the attached property. This was the proper construction of the language of the bond. Upon the facts alleged in the complaint and admitted or found true, the defendants under the bond as written were bound to pay the amount demanded of them on the execution against William J. Merritt, to the extent of the value of the attached property, although it belonged to Lucius R. Merritt.

Under the bond as reformed they were not so liable. We are asked to correct the finding with respect to the agreement between the parties as to the bond which

was to be given as the consideration for the release of
the attachment, and as to the fact that the bond in
suit was executed and delivered, through a mutual
mistake of the parties, in the belief and understanding
that it was in accord with such agreement.

There was no real conflict of testimony as to what
occurred prior to the execution and delivery of the bond.
It came from the attorneys of the parties and they sub-
stantially agree.  The Merritts had sold the attached
property, and to give a clear title desired to have the
attachment released.  One of their attorneys, without
previous conference or negotiation with the plaintiffs
or their attorneys, prepared and caused to be signed by
the same parties who signed the bond in suit, a bond
which, to distinguish it, we may call a proposed bond,
and also a release of the attachment.  The proposed
bond was in all respects precisely like the bond in suit,
except that it did not contain in the condition the four
words "or either of them," which are italicized in the
condition as printed in the statement, and did contain
the word "the" in place of the italicized word "any."
He took the proposed bond and the proposed release
of the attachment from his own office in Stamford to
the office of the plaintiffs' attorneys in Norwalk, and
told them that he wished to give that bond on the
release of the attachment.  The attorney having special
charge of the plaintiffs' case not being present, and his
partner not wishing to decide the matter, the papers
were left with the latter to be submitted to the attorney
in charge of the case upon his return.  The latter two
days later took the proposed bond back to the defend-
ants' attorney in Stamford, and refused to accept it
unless certain changes were made, calling his attention
to the fact that it had not been drawn pursuant to the
statute, in that the word "the" above referred to was
used in place of the word "any" in the statutory form

in the Practice Book. He insisted that "any" should be there substituted for "the", and that the words "or either of them" should be inserted where they appear italicized in the copy as printed. This was agreed to by the defendants' attorney, and another bond, the one now in suit, was prepared by him in which the proposed changes were made, and it was signed by the same persons who signed the other. The plaintiffs' attorneys then caused the release of attachment to be properly signed, and by letter notified the defendants' attorney of that fact and that they would be glad to make the exchange at a time and place named, adding that their clients had made objection to releasing the attachment, but that the attorneys had explained to them that the sureties were good and that the bond was such as in all probability the court would order. At the time and place named the release of the attachment was exchanged for the bond. This was the entire transaction as testified by the attorney who drew the papers and who is one of the defendants in the case. He is corroborated as to these facts by the attorneys for the plaintiffs.

The same witness was permitted to testify that in drafting the bond in suit he "intended to have the obligors liable the same as the land was liable, the same as the interests of the respective defendants, William J. Merritt and Lucius R. Merritt: that is, if the judgment was rendered against both, that the interest of both of them, in whosever name it stood, should be paid by the obligors upon the execution; if the judgment was against William J. Merritt, that the obligors should be liable to pay whatever interest William J. Merritt had to the sheriff in the execution; if the judgment was against Lucius R. Merritt, they should be obliged to pay whatever interest Lucius R. Merritt had in the land to the sheriff." He and other

signers of the bond also testified that at the time of
signing the bond they believed and understood that it
expressed the meaning which was thus testified to
have been intended.   All this evidence was objected to,
and the question of its admissibility is elsewhere con-
sidered.   It was admitted and is to be considered as
in the case upon a motion to correct the finding.   There
was also evidence tending to show that the plaintiffs'
attorneys understood and believed that the bond,
after the additions insisted upon had been made, held
the obligors to the extent of the interest of either of the
defendants in the original action in the land attached
for any judgment which should be rendered therein;
and that the bond was the same in effect as the court
would have ordered in case an application had been
made to it to substitute a bond for the attachment.

There was no evidence showing that the plaintiffs or
their attorneys prior to the bringing of this action knew
or believed that the defendants or their attorneys
understood or claimed that the effect of the bond was
different than that which the law places upon it.   It
was in evidence that the plaintiffs' attorney at the time
of the negotiations supposed that the defendants' at-
torney understood the legal effect of the bond.

Does this evidence support the finding of the court
that before and at the time of the delivery of the bond
there existed an agreement between the parties that a
different bond should be delivered?   The defendants
sought the plaintiffs, and, in their own interest, desired
them to release the attachment and accept the proposed
bond, both of which the defendants had prepared
without a previous conference with or suggestion from
the plaintiffs.   If that bond had been accepted, and
had then contained the words which were afterward
added to it, no serious claim could have been made
that the bond had been given pursuant to any such

agreement as the court has found. The agreement in that case would be that that bond should be exchanged for that release and the contract would have been executed. And this would be so although it should appear that the bond was prepared by the defendants' attorney with the intention that it should make the obligors "liable the same as the land was liable," and understood that to be its legal effect; and although the plaintiffs at the time of accepting it believed that it was such a bond as the Superior Court on application would order. The two mistakes would not make an agreement different from that expressed in the condition of the bond. At most, they would show only that there was no agreement between the parties, in which case, if the defendants were entitled to any relief, it would be the cancellation, not the reformation, of the bond.

What is there in what occurred later to change that situation and warrant a finding that there was such an agreement as the court has found? Instead of accepting the proposed bond, the plaintiffs refused to accept it unless certain changes were made in it. Here was a new proposition. It amounted to an offer to give the release upon the delivery of the bond in suit. This proposition was accepted, and that acceptance made an agreement. The new bond, being the same as the old, with the addition of the five words as agreed, was drawn and the exchange was made. It is not a case where the scrivener has made a mistake in the use of language, or has added or omitted words, and thus failed to express the agreement made. The language of the bond to be exchanged for the release was explicitly agreed upon. It was fully understood by the defendants' attorney, as he repeatedly testified, and it was followed by him in drafting the bond. He may have been mistaken as to the effect of it, but that does not change the agreement.

The plaintiffs' pointing to the fact that the word "any" instead of "the" is found in the form of bond contained in the Practice Act as a model to be followed where the court orders a bond, was to support his claim that the same word should be used in the bond which the defendants were seeking to have accepted in place of the attachment. But at the same time he was insisting that words not found in the form in the Practice Book should be added, which made the obligors liable for any judgment which might be rendered to the extent of the interest of either or both the Merritts in the land attached. This was far more significant than the reference to the word "any."

What weight, if any, the court gave to the testimony of the defendants' attorney that he intended when drawing the bond in suit "that the obligors should be liable the same as the land was," does not appear. That it had no weight as proving an agreement for a different bond than that in suit is clear for several reasons. It is manifest from his own testimony that it cannot be true that he so intended, taking the word "intend" in its ordinary sense, i. e. "to have in mind a design or purpose." It may have been his purpose when he drew the original bond to so frame it that the obligors should be liable only as the land was liable. But his purpose in redrafting it, and making the change and addition insisted upon by the plaintiffs, could only have been to make it comply with those demands which he had assented to. He doubtless believed that its effect remained the same as before the change; he so testified. But he was not rewriting the bond with the end in view of making it limit the obligors' liability as stated. The proposed bond having been executed, the changes could not be made by interlineations without a re-execution of the bond, therefore a new bond embodying the changes was made and executed.

Nor can his intention in drawing the instrument after its terms had been agreed upon, have any weight in determining what the agreement was (for both parties agree as to that), nor any weight as showing a modification of that agreement, unless knowledge of such intent or understanding was communicated to the other party before or at the time of the acceptance of the bond, and there is no evidence that it was so communicated. On the contrary, there was evidence that the plaintiffs believed that the defendants' attorneys understood the legal import of the bond.

The court finds that there was a mutual understanding and belief between the parties at the time the bond was delivered that it was such in form and legal effect as ought to be ordered by a judge of the Superior Court, and that through their mutual mistake and misunderstanding as to its legal effect and meaning it was not such as such judge would have ordered. It appears clearly from the evidence how the mistake and misunderstanding came about. The mistake in the transaction was as to the different interpretations of the statute concerning the substitution of a bond for an attachment, and of the legal significance of the language of the bond. The defendants' interpretation of the language of the bond was that the actual interest of the defendant or defendants against whom judgment might be rendered would be the measure of liability of the obligors. This would be the measure of their liability under a statutory bond, had a proper one been taken upon a proper application to a judge. The defendants thus properly interpreted the purpose of the statute, but were mistaken as to the legal significance of the bond. The plaintiffs, in consenting to release the attachment, relied upon the bond in form as given. It thus appears that the defendants' mistake was solely in their interpretation of the bond which they gave; they supposed

its legal effect to be different than it was. The plaintiffs, on the contrary, insisted and relied upon the bond which was given. They interpreted it correctly, and believed that they were entitled to such a bond upon an application under the statute. But it does not follow from the fact that they supposed that they were entitled to such a bond under the statute, that they ever agreed to accept such a bond as a judge ought to order if applied to under the statute. Had they been informed of the defendants' belief and understanding as to the meaning of the statute and the significance of the bond, quite likely they would have refused to accept the bond, and required that an application should be made under the statute.

The court, it would seem, drew the inference from the fact that each supposed that the bond was such as a judge ought to order, that there was an agreement between the parties in those terms for such a bond. This was not warranted, especially in view of the clear and uncontradicted testimony as to the entire transaction.

Nor was the court warranted in holding, upon the facts found, that the mistake was mutual. The mistake of the defendants was not participated in by the plaintiffs. Their action in accepting the bond was in no way affected by it. Nor was their acceptance of the bond due so far as appears to any mistake of their own as to the requirements of the statutory bond, nor was the defendants' delivery of the bond in any way due to or caused by any such mistake of the plaintiffs. To warrant the reformation of a contract on the ground of mutual mistake, the mistake must have been common to both parties, and it must appear that by reason of it both have done what neither intended, and the evidence should be clear, substantial, and convincing as to both those facts. *Hearne* v. *Marine Ins. Co.*,

20 Wall. (87 U. S.) 488, 490; *Moffett, Hodgkins & Clarke Co.* v. *Rochester*, 178 U. S. 373, 385, 20 Sup. Ct. Rep. 957; *Bishop v. Clay F. & M. Ins. Co.*, 49 Conn. 167, 171.

The mistake of one only of the parties inducing him to sign a contract which, but for the mistake, he would not have entered into, may be a ground in some cases for cancelling the contract, but it cannot be a ground for a reformation of it.

The finding should therefore be corrected by changing paragraphs fourteen and seventeen thereof in the manner requested, and by making paragraphs five, seven, eight, and nine, also nineteen, twenty, and twenty-two of the plaintiffs' draft-finding, a part thereof. So changed, it does not support the interlocutory judgment, and that judgment is reversed.

The final judgment was affected by the error in granting the interlocutory judgment, and that also is reversed, and a new trial is ordered upon the issues raised upon the answer and the demurrer thereto.

In this opinion HALL, C. J., PRENTICE and RORA-BACK, Js., concurred.

GAGER, J. I dissent from the opinion of the majority of the court, on the ground that the record does not justify the correction of the finding on which error is based. As I read and understand the evidence, the correction violates the well-established rule that no correction will be made unless some material question of fact has been found without evidence, or some admitted or undisputed fact has been omitted from the finding. The opinion rendered being substantially the determination of a question of fact limited to this case, a dissenting opinion would serve no useful purpose and is omitted.