THE MILFORD YACHT REALTY COMPANY *v.* THE MILFORD YACHT CLUB, INC.

BROWN, JENNINGS, BALDWIN, INGLIS AND O'SULLIVAN, JS.

Argued February 7—decided March 28, 1950.

*Joseph Weiner,* with whom was *William Gitlitz,* for the appellant (plaintiff).

*Herbert L. Emanuelson,* for the appellee (defendant).

O'SULLIVAN, J.    This action was instituted to obtain reformation or cancellation of an executed contract of sale of realty or, if neither of these remedies should be available, an award of damages for loss claimed to have been occasioned by either mutual or unilateral mistake.

The finding, which is not subject to correction, presents the following facts: After it was incorporated in 1926 with paid-in capital of $6850, the plaintiff pur-

chased a parcel of land in Milford for $15,000, of which $6000 was paid in cash. The balance was secured by mortgage. The defendant was incorporated without capital stock in 1906. The purpose of its existence was to maintain a yacht club for its membership. After the plaintiff acquired the property, the defendant went into possession and occupied it for the next thirteen years under a series of oral leases which provided, as a form of rent, for the payment of all of the plaintiff's operating expenses. As of April 1, 1939, the parties executed their first written lease, which ran for a term of five years. In the latter part of 1943, negotiations aimed at renewing the lease were begun and continued until September, 1944. At one time during the course of the protracted discussions the defendant prepared to abandon the premises, and at another time attempted without success to buy the property for $11,000. The parties eventually came to an understanding and on September 15, 1944, executed a written lease effective as of the preceding April. It provided for a ten-year term upon a base rent of $342.50 per annum with the added requirement that the defendant should pay the plaintiff's operating expenses. These were defined, and were to include, among other particulars, all federal taxes assessed against the lessor, an item which had not been incorporated in the previous lease under "operating expenses." There was a further provision giving the defendant an option to purchase the property on or after April 1, 1949, for $16,000. One thousand dollars toward the purchase price was to be paid upon the execution of the lease, and it was provided that the defendant was to pay $500 annually upon the balance, all payments to be subject to forfeiture if the option was not exercised. The defendant knew that, in determining the sale price on these terms, the plaintiff

was trying to insure receipt of a sum sufficient to permit it to repay to its stockholders the amount of capital they had paid in plus a fair return thereon. The defendant, however, took no part in setting such a figure.

During 1945 the defendant made the first of the yearly payments and shortly thereafter requested the plaintiff to consent to an acceleration of the option. The plaintiff countered with an offer to sell at once if, to the balance of $14,500 then due, the defendant would add the sum of $1027.50, representing the base rent for three years. The reason the plaintiff sought this additional amount lay in its desire to repay to its stockholders the sum they had invested plus 3 per cent thereon for substantially twenty years. The plaintiff's offer was accepted and the sale took place on October 5, 1945. The plaintiff would not have set $16,000 as the purchase price in the lease, or offered to accelerate the option on the terms it submitted, had it known, as shortly after the sale it learned, of certain tax liabilities to the federal government amounting to $2766.87. These liabilities were predicated upon the plaintiff's failure to file income tax returns throughout its corporate existence because of its mistaken belief that they were not required since it was a nonprofit organization. The $2766.87 demanded by the government, and eventually paid by the plaintiff, was for income and declared value excess profits taxes with interest and penalties for eight separate years. Had returns been filed on time, the plaintiff would have been subjected to neither interest nor penalties, and all operating expenses such as property taxes, interest, cost of repairs and similar items would have been legitimate deductions from gross income. However, in determining the tax liability, the government refused to permit such deductions because of the plaintiff's neglect.

What tax, if any, would have been required under properly filed returns does not appear, but obviously it would have been far below the figure sought by the government. After paying this obligation, the plaintiff was unable to carry out its plan of distribution to its stockholders. The defendant had nothing to do with the failure of the plaintiff to file tax returns, nor did it have any knowledge of the tax liabilities until April, 1947, when the plaintiff demanded that it be reimbursed to the extent of $2703.82 plus $300 for accounting and legal fees necessitated by the controversy with the government. The demand was refused and this action was brought. Since the date of purchase, the defendant has expended approximately $10,000 in improving the property. The trial court denied the relief sought but entered judgment for the plaintiff to recover $126.38, an amount which the defendant conceded it owed under a phase of the case that is not material upon this appeal.

Mistake means a state of mind that is not in accord with the facts. Restatement, 2 Contracts § 500. The state of mind of a person produces no legal consequences unless, because of it, some act of his which does result in such consequences is performed. When this occurs, the court exercises the power of reformation where the mistake is common to both parties and by reason of it each has done what neither intended. *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 374, 128 A. 33; *Snelling* v. *Merritt,* 85 Conn. 83, 100, 81 A. 1039; *Cherkoss* v. *Gasser,* 123 Conn. 368, 370, 195 A. 737.

There was no mistake on the part of the defendant which influenced or affected it in accepting the offer on the terms submitted. Its object was to purchase at the price at which the property was offered. What the plaintiff might do with the money it received and

whether the amount would prove ample to accomplish what it had in mind were not factors in the defendant's conduct. *Grymes* v. *Sanders,* 93 U. S. 55, 63, 23 L. Ed. 798. The case does not present a situation where the purchase price was reached upon an agreement that it was to be sufficient to permit the plaintiff to pay to its stockholders their invested capital plus a reasonable return thereon. There was no mutual mistake, and the plaintiff was not entitled to a reformation of the contract.

The plaintiff makes the further claim that the contract of sale should be rescinded. Unilateral mistake, while never a ground for reformation, may under certain circumstances justify the rescission of a contract. *Snelling* v. *Merritt,* supra, 101; *Mishiloff* v. *American Central Ins. Co.,* supra, 375. In the view which we take of the case, this claim requires no extended discussion.

We are dealing with an executed contract. If the plaintiff intended to seek a rescission, it was required, upon discovering its mistake, to take speedy, affirmative action to keep or place the defendant in statu quo. This it did not do. On the contrary, it remained silent for well over a year and during this time the defendant was making substantial improvements to the property. Furthermore, it has never offered to reimburse the defendant for these expenditures. Prompt election and restoration of the innocent party to its former position were essential. *Mandeville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596; 5 Williston, Contracts (Rev. Ed.) § 1594; Restatement, Restitution § 64; 3 Pomeroy, Eq. Jur. (5th Ed.) § 856d. "A court of equity is always reluctant to rescind, unless the parties can be put back *in statu quo.* If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it." *Grymes* v. *Sanders,* supra, 62.

The case is not of the latter character and the above principle applies to preclude any right of rescission in the plaintiff.

Nor is the plaintiff entitled to damages. What the actual value of the property was when the plaintiff sold it does not appear. The facts disclose no unjust enrichment of the defendant nor any unconscionable advantage it had obtained. See *Chatfield* v. *Fish,* 126 Conn. 712, 713, 10 A. 2d 754; *Schleicher* v. *Schleicher,* 120 Conn. 528, 533, 182 A. 162.

There is no error.

In this opinion the other judges concurred.