UNITED STATES of America for the Use and Benefit of Howard SPECTOR, Plaintiff,

v.

The FUSCO–AMATRUDA COMPANY and the Travelers Indemnity Company, Defendants.

Civ. No. 9385.

United States District Court
D. Connecticut.

April 5, 1965.

David W. Goldman, Goldman & Goldman, New Haven, Conn.; Joseph E. Levine, Boston, Mass., for plaintiff.

William L. Hadden, Jr., Pouzzner & Hadden, New Haven, Conn., for defendants.

ZAMPANO, District Judge.

In this action before the Court without a jury the plaintiff, Howard Spector, seeks recovery in contract from The Fusco-Amatruda Company, hereinafter referred to as defendant, and The Travelers Indemnity Company, as surety, under the provisions of the Miller Act, 40 U.S.C. § 270 b.

During the year 1960, the defendant was awarded a government contract for the construction of navy barracks on an eleven acre tract owned by the government in New London, Connecticut. As part of the work the defendant was required to purchase and spread loam in preparation for the seeding of lawns. Bids were solicited from several subcontractors.

In early March, 1961, the plaintiff, Howard Spector, a contractor in the business of selling and spreading loam, conferred with Philip Fusco, the defendant's job superintendent on the project, concerning a bid for the subcontract. There is no dispute that after some negotiations Spector and Fusco agreed on a price of $2.50 per cubic yard of loam delivered to the site. With respect to the cost of spreading the loam, however, there is a serious conflict as to the agreement between the parties.

Spector testified he quoted a price of $.75 per *square* yard of area covered by loam while Fusco insists the bid was $.75 per *cubic* yard of loam spread. Under the facts of this case, the cost of spreading the loam measured on a square yard basis is approximately nine times greater than the price figured on a cubic yard basis. The Court adopts neither party's version of this conversation. Rather, it is found more probable that the terms "cubic" or "square" were not specified by either man and negotiations were carried out in the "talk of the trade" language of "yards" only.

Fusco then telephoned the defendant's home office and both Fusco and Spector discussed the terms of the subcontract with Charles Torcellini, the defendant's job coordinator. Torcellini thereafter drafted and caused to be typed a contract which was subsequently signed by the parties. The contract, in pertinent part, read as follows:

"a. *Additional topsoil,* as required to provide a minimum depth of 4-inches shall be furnished by the contractor from approved sources. The topsoil shall be a natural, fertile, friable surface soil, without toxic substances injurious to vegetative growth, and shall be obtained from a well-drained arable site. It shall be clean and free from clay lumps, stone, clods, stumps, weed clumps, roots, sticks, extraneous debris, other objectionable matter one inch or more in diameter, or any other material which might be harmful to plant growth.

"Payments for above topsoil loam to be net 30 days after delivery.

"*Optional Agreement.*

"You agree to furnish all labor, tools and equipment to machine spread and hand rake topsoil loam for sum of Seventy Five Cents ($0.75) per square yard of area. Spreading of topsoil loam is optional with our firm."

It is noted that the written instrument contains the words "($0.75) per square yard of area."

Spector began furnishing loam on June 21, 1961 and billed the defendant for these deliveries on June 30, 1961 and on July 31, 1961. Pursuant to the first invoice, he was paid the sum of $6,000 on account. Although Spector commenced spreading operations in June, it was not until August 18, 1961 that an invoice reflected a charge for this work.

In the meantime, on or about August 8, 1961, when his work was 90% completed, Spector telephoned Torcellini and

requested a partial payment of $13,000 for the spreading of loam operation. Torcellini replied there had to be a mistake because the total payment for the entire job, including loam and spreading, was estimated by the defendant at less than $13,000. After reviewing the price specifications in the written contract at Spector's suggestion, Torcellini referred the matter to officers of the defendant.

On August 9, 1961, Thomas Amatruda, president of the defendant, met Spector on the job site to discuss the dispute. Amatruda reiterated to Spector that there was a mistake in the agreement with respect to the measurement scale to determine the price of spreading the loam. Spector replied, in effect, "a contract is a contract" and demanded payment pursuant to its terms. Moreover, Spector stated the reasonable value of the work he was required to perform to prepare the site for the spreading operations far exceeded the price offered by the defendant. Unable to resolve the disagreement, Spector stopped work and left the project. This lawsuit followed.

Plaintiff claims there is an unpaid balance for work performed under the terms of the written contract in the amount of $26,255.75. Defendant, seeking reformation of the contract, alleges defenses of a mutual mistake of the parties and, in the alternative, a unilateral mistake by the defendant which was known to the plaintiff and not disclosed to the defendant.

■ The evidence is abundant that the defendant never intended to enter a contract with the plaintiff for the spreading of loam based on a "square yard" price formula. In its long history as a general contractor it never paid a subcontractor for loam spreading operations by such a measurement. Its estimate for the loam and spreading costs was far less than the plaintiff's charges under the terms of the contract. Moreover, the defendant rejected two bids for the same work from two other reputable subcontractors which were far less than the prices claimed by the plaintiff: Savin Bros. Construction Company bid $3.90 per cubic yard for furnishing and spreading the loam, ascribing $2.55 per cubic yard to furnish and place loam and $1.35 per cubic yard to spread it; Cosgrove Construction Company bid $4.00 a cubic yard for loam delivered and spread, of which $3.10 a cubic yard was for furnishing loam and $.90 a cubic yard was the charge to spread it. Obviously, defendant never intended to pay plaintiff approximately nine times more than it would have had to pay two other available and competent bidders. Additionally, the expert testimony introduced by the defendant was substantially uncontroverted that a charge of $.75 per square yard to spread loam on this project was unconscionably high.

Whether the burden of the faux pas is cast on a negligent or careless scrivener or upon a misunderstanding in the oral transmission of the terms of the agreement, a mistake was made in the contract by the defendant and the Court so finds.

■ However, this finding in and of itself does not entitle the defendant to the relief it seeks. A contract is not rendered unenforceable or subject to reformation by the mistake of one party in expressing his intention, if the other party has no knowledge of the mistake or if the other party has no reason to believe a mistake was made. Milford Yacht Realty Co. v. Milford Yacht Club, Inc., 136 Conn. 544, 72 A.2d 482 (1950); Snelling v. Merritt, 85 Conn. 83, 81 A. 1039 (1911); 3 Corbin, Contracts, § 608.

Although there is a strong indication Spector had reason to know the contract price for spreading loam was in excess of what the defendant intended to pay, the Court does not find that he knowingly sought to take advantage of the mistake by fraud or inequitable conduct which would entitle the defendant to a reformation of the contract. Home Owners' Loan Corporation v. Stevens, 120 Conn. 6, 10, 179 A. 330 (1935); Town of Essex v. Day, 52 Conn. 483, 1 A. 620 (1885). Nor does the Court find that the plaintiff in-

tended the price to be determined on a cubic yard basis, which also would permit a reformation of the contract here on the ground of "mutual mistake." Allis v. Hall, 76 Conn. 322, 56 A. 637 (1904); Town of Enfield v. Hamilton, 110 Conn. 319, 148 A. 353 (1930).

It appears from the testimony plaintiff was unaware of the actual difference between a square yard and a cubic yard and the effect this difference would have on the price he was to receive for spreading the loam at the time he entered into the contract. At one point Spector defined both a square yard and a cubic yard as "three foot by three foot by three foot." He further testified he thought a square yard and a cubic yard were "the same measurement."

Under all the circumstances of the case it seems clear that there was no real "meeting of the minds" between the parties as to the exact price formula for the spreading operations. 3 Corbin, Contracts, § 608, p. 672. Reformation of the contract would be inequitable to the plaintiff. The mistake substantially affected the methods employed by Spector to spread the loam and, further, influenced him to perform substantial extra work to prepare the site for loam and spreading operations which was the responsibility of another subcontractor on the project. He cannot be put in status quo. Justice requires a rescission of the contract with compensation to the plaintiff in quantum meruit for the value rendered to the defendant by way of restitution. C. N. Monroe Mfg. Co. v. United States, 143 F.Supp. 449 (E.D.Mich.1956); 3 Corbin, Contracts, § 609, p. 689.

The plaintiff introduced evidence that the actual cost for labor and equipment to spread the loam totalled $22,551. The Court finds, however, that a portion of these charges are attributable to expenses incurred for loam sold and delivered and not properly ascribable to the spreading work. For example, plaintiff's claim that the use of two ten-wheel dump trucks forty hours a week for three weeks was necessary to spread the loam is un-

tenable. The Court finds the fair and reasonable value of the plaintiff's loam spreading services to the defendant to be the sum of $13,500. In addition, the plaintiff is entitled to recover the sum of $3,535 for loam sold and delivered and, further, to recover the sum of $782.50 for equipment supplied to the defendant. The defendant is allowed a credit of $150.-00, by agreement.

Accordingly judgment shall enter for the plaintiff in the total sum of $17,667.-50, with interest from August 18, 1961 to January 3, 1963, the date the defendant was served with notice of the federal government's lien rights against Spector.