GARY V. SINK ET AL. *v.* MEADOW WOOD COUNTRY
ESTATES, INC.
(7026)

BORDEN, DALY and JACOBSON, Js.

Argued February 28—decision released June 6, 1989

*James M. O'Connor,* with whom was *Dominic J. Caciopoli,* for the appellants (plaintiffs).

*Edward J. Dolan,* for the appellee (defendant).

BORDEN, J. The defendant appeals from the judgment of the trial court ordering the defendant to perform its contract with the plaintiffs by conveying a subdivision lot. The defendant claims that the trial court erred (1) in ordering specific performance when there was no evidence that the plaintiffs were ready, willing and able to perform, (2) in finding that an order of the zoning enforcement officer of the town of Westbrook did not constitute a stop work order, (3) in finding that the subject parcel of property was still in existence even though the original subdivision approval had expired, (4) in impermissibly modifying the contract by ordering the defendant to convey a lot 8000 square feet larger than the lot described in the original contract, and (5) in denying the defendant's special defenses. We find no error.

The trial court found the following facts. In 1982, the plaintiffs entered into a written agreement to purchase a subdivision lot, designated lot No. 8, from the defendant for $23,000. The lot was situated in a residential subdivision called Meadow Wood Country Estates, which had been approved by the Westbrook planning commission. The subdivision was under construction at the time the contract was executed. The lot consisted of approximately 91,000 square feet and fronted on a proposed road to be known as Kenrose Terrace Road.

Under the terms of the agreement, the plaintiffs paid a deposit of $500 upon execution of the agreement and

agreed to pay an additional $6200 upon the completion of Kenrose Terrace Road, but not prior to April 1, 1983. The remainder of the purchase price, $16,300, was to be financed by the seller by virtue of a five year purchase money mortgage. The closing was to be on or before April 1, 1983.

The agreement stipulated that if the buyers failed to make any of the scheduled payments, they would forfeit as liquidated damages all claims to the premises and would forfeit all money paid under the contract. The contract explicitly reserved in each party the right, inter alia, to enforce specific performance of the contract.

The parties did not close on or before April 1, 1983, because the defendant had not completed Kenrose Terrace Road. On August 23, 1983, the parties agreed in writing to extend the closing date to October 31, 1983. On that date, the parties agreed to extend the date to October 31, 1984, and, on October 12, 1984, they agreed to extend it to October 31, 1985. Each extension agreement provided for a closing on an alternative date, namely, the date of completion of Kenrose Terrace Road. Each extension also provided that the road was to be completed on or before the new closing date in order for the underlying contract to remain in full force; otherwise the buyer would be remitted any deposit money paid. The extension agreements did not provide for the rescission, revocation or termination of the underlying contract.

On June 20, 1983, the Westbrook zoning enforcement officer issued an order that the construction company that was building the roads in the subdivision cease and desist from removing any further topsoil from the development without securing the required special exception from the Westbrook zoning commission. The officer, by another letter, dated August 25, 1983, clar-

ified his order by stating that the cease and desist order pertained only to the removal of topsoil from the subdivision without a permit and did not constitute a stop work order on the subdivision site in any other respect. The defendant ceased its topsoil removal operations, but did not seek to resolve the problem for over a year.

On December 14, 1984, the Westbrook planning commission notified the defendant that the approval of the Meadow Wood Country Estates subdivision had expired on October 15, 1984, at the end of the statutory five year completion period for subdivisions provided by General Statutes § 8-26c.[1] As a result, the defendant was required to halt work on the development and to reapply for subdivision approval under somewhat different standards and criteria than had applied in 1979, when the original subdivision had been approved.

The defendant's new application for subdivision approval redrew several lot boundaries, including those of lot No. 8. The exterior boundaries of the subdivision were redrawn because the original survey of the defendant's entire plot, upon which the earlier subdivision map had been based, had erroneously included

---

[1] General Statutes § 8-26c provides in pertinent part: "(a) Any person, firm or corporation making any subdivision of land, except as provided in section 8-26g, shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires.

"(b) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town, and no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land. . . ."

some small parcels of land that the defendant did not own. The new lot No. 8 is situated in approximately the same location, and is approximately 8000 square feet larger than the original lot No. 8, but has somewhat less road frontage than the original lot No. 8. On August 12, 1985, the planning commission approved the resubmitted subdivision plan.

In the fall of 1985, the plaintiffs demanded that the defendant perform the contract. The defendant refused. On October 30, 1985, one day prior to the expiration of the final contract extension, the plaintiffs initiated this lawsuit, seeking specific performance and damages. After a trial to the court, a judgment of specific performance was rendered in favor of the plaintiffs. This appeal followed.

I

The defendant first claims that there was no evidence to support the trial court's factual finding that the plaintiffs were ready, willing and able to perform the contract, and that the trial court therefore erred in ordering specific performance. We disagree.

In an action for specific performance, it is the plaintiffs' burden to prove that they were ready, willing and able at all times to purchase the property. *Frumento* v. *Mezzanotte,* 192 Conn. 606, 615, 473 A.2d 1193 (1984). The defendant argues that the plaintiffs failed to show that they were prepared to perform. In support of this argument, the defendant quotes a single passage from the transcript that indicates that on October 30, 1985, the plaintiffs were not willing to perform until the defendant built the road. This fact is of no assistance to the defendant, because the trial court found that the completion of Kenrose Terrace Road by the defendant was a condition precedent to the plaintiffs' duty to perform. The plaintiffs' unwillingness to perform does not make the remedy of specific perform-

ance unavailable to them where their unwillingness is the result of the defendant's failure to fulfill a condition precedent to the plaintiffs' performance. 5A A. Corbin, Contracts (1964) § 1175, pp. 308–309.[2]

## II

The defendant next claims that the trial court erred in finding that the order of the zoning enforcement officer did not constitute a stop work order. This claim challenges the factual basis of the trial court's decision, and our review is limited to determining "whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); see *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.,* 18 Conn. App. 559, 563, 559 A.2d 241 (1989).

Far from being clearly erroneous, the trial court's factual finding that the defendant was not precluded from completing Kenrose Terrace Road by the officer's order is amply supported by the record. The trial court found that the order characterized by the defendant as a "stop work order" in fact required no more of the

---

[2] At oral argument in this court, the defendant claimed for the first time that the plaintiffs failed to prove that they were financially able to perform the contract. It is true that "a trial court may justifiably withhold equitable relief from a buyer who, put to his proof on such an allegation, fails to satisfy his burden of demonstrating his financial ability to purchase the property." *DiBella* v. *Widlitz,* 207 Conn. 194, 200, 541 A.2d 91 (1988). At trial the plaintiff Gary Sink testified that he was at all times ready, willing and able to perform the contract. The defendant's only challenge to Sink's testimony concerned the plaintiffs' willingness—not their ability—to perform. It is clear from this record that the defendant did not raise at trial, or in its brief on appeal, the issue of the plaintiffs' financial ability to perform. We ordinarily decide the case on the theory on which it was tried and decided in the trial court. *Commissioner of Health Services* v. *Kadish,* 17 Conn. App. 577, 580 n.4, 554 A.2d 1097 (1989). We therefore decline to consider this claim of the defendant.

defendant than that it cease removing topsoil from the construction site without having first obtained the proper permits. A second letter from the zoning enforcement officer emphasized this precise point. The trial court found that the defendant could have continued excavating the bed for Kenrose Terrace Road either by storing the topsoil on a vacant lot on the site or by obtaining the proper permits for removing the topsoil from the site. The trial court also found that the defendant's failure to follow either course of action was due solely to the defendant's lack of due diligence in performing the contract. These findings are supported by the evidence and logically support the court's conclusion that the zoning order did not halt the work on the roads in the subdivision.

## III

The defendant claims that the trial court erred in finding that the expiration of the original subdivision permit did not relieve the defendant of its contractual duties. We disagree.

The defendant argues that, because the original subdivision permit—and with it the legal existence of lot No. 8—had expired October 15, 1984, the defendant's duty to convey the original lot No. 8 was excused by the doctrine of impossibility. "The concepts of impossibility or impracticability of performance have been recognized in various decisions of [our Supreme Court]." *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 313, 514 A.2d 734 (1986). These doctrines represent an exception to the traditional principle that contracts should be enforced as written, "in recognition of the fact that certain conditions cannot be met because of unforeseen occurrences. Cf. *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 413, 538 A.2d 219 (1988). A party claiming that a supervening event or contingency has

prevented, and thus excused, a promised performance must demonstrate that: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. 2 Restatement (Second), Contracts § 261; E. Farnsworth, Contracts (1982) § 9.6, p. 678.'' *Dills* v. *Enfield,* 210 Conn. 705, 717, 557 A.2d 517 (1989). The third prong of this test is dispositive of the defendant's argument.

The trial court found that the defendant, because of its lack of diligence, failed to complete the subdivision within the five year period provided in General Statutes § 8-26c. Thus, the defendant's fault in failing to complete the subdivision on time renders the doctrines of impossibility or impracticability inapplicable to this case. *Dills* v. *Enfield,* supra; *West Haven Sound Development Corporation* v. *West Haven,* supra.

IV

The defendant next argues that the trial court erred in granting specific performance because the defendant had rescinded the contract and because the court's order compelled the defendant to convey a lot 8000 square feet larger than the lot described in the original contract. We are not persuaded by either of these arguments.

More specifically, the defendant argues that when it discovered its inability to convey lot No. 8 as originally described, it allowed the contract to expire and attempted to refund the plaintiffs' deposit. The defendant contends that by this act it absolved itself of all contractual liability to the plaintiffs by restoring the plaintiffs to the status quo ante. Cf. *Mandville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596 (1937) (party

seeking to rescind contract must restore or offer to restore the other party to its former condition as nearly as possible.) The short answer to this argument is that the defendant's attempt to refund the plaintiffs' $500 deposit did not restore the plaintiffs to their former position because the plaintiffs, in reliance on the defendant's implicit promises to complete the road and to convey title to lot No. 8, refrained for three years from looking elsewhere to purchase land in a rapidly rising market.[3]

The defendant's argument incorrectly relies on rescission cases involving unilateral mistake. See, e.g., *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.,* 136 Conn. 544, 549, 72 A.2d 482 (1950) (unilateral mistake, while not a ground for reformation, may under certain circumstances justify the rescission of a contract); *Snelling* v. *Merritt,* 85 Conn. 83, 100, 81 A. 1039 (1911); *Regional School District No. 4* v. *United Pacific Ins. Co.,* 4 Conn. App. 175, 182, 493 A.2d 895, cert. denied, 196 Conn. 813, 494 A.2d 907 (1985) (defendant's material error in bid was grounds for rescission where plaintiff had not relied on bid and lowest accurate bid was still open). These cases are inapposite because in the present case the claimed "mistake," namely, the defendant's redrawing the boundaries of lot No. 8, was a unilateral, voluntary act by the defendant that occurred after the defendant had entered into a binding agreement to convey the property.[4] Thus, the purported mistake did not affect the parties' original meeting of the minds. *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.,* supra, 548–49. Furthermore, the

---

[3] The plaintiffs offered testimony that the lot for which they had contracted to pay $23,000 in 1982 had a market value at the time of trial of $100,000.

[4] The acting chairman of the planning commission testified that the principal change between the subdivision regulations in effect in 1979 and those in force in 1983 was that rear lots, that is, lots with street frontage of less than 200 feet, were required to contain 150 percent of the square footage

defendant discovered the mistake three years after the contract was executed, during which time the plaintiffs had relied to their detriment on the defendant's repeated representations, implicit in the three contract extensions, that it would perform its contractual duties. Compare *Regional School District No. 4* v. *United Pacific Ins. Co.,* supra, 182–83 (defendants successfully sought to rescind contract before plaintiff had relied on erroneous bid).

Nor did the trial court abuse its discretion in ordering the defendant specifically to perform the contract by conveying title to the new lot No. 8 to the plaintiffs. "As a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution of the contract even though the property contracted to be sold becomes considerably more valuable at the time performance is due." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 19, 420 A.2d 1142 (1979). "In framing an order of specific performance . . . the trial court can mold it to do justice as fully as is practicable. . . . If the exact performance promised is very difficult to enforce or has become impossible, unreasonably burdensome, or unlawful, the court may order a performance not identical with what was promised." E. Farnsworth, Contracts (1982) § 12.5; 5 A. Corbin, Contracts (1964) § 1170, p. 256; see, e.g., *Nelson* v. *Gibe,* 162 Mich. 410, 127 N.W. 304 (1910) (buyer entitled to deed for what seller owned, although over two thirds of lot sold did not belong to seller).

of "frontage lots" in the same subdivision. Frontage lots have a street frontage of 200 feet or greater. Lot No. 8, under both the 1979 and 1985 subdivision plans, was a frontage lot. There was no evidence that the new regulations required frontage lots to be enlarged; in fact, there was no evidence that the change in the size of lot No. 8 was compelled, directly or indirectly, by the regulatory changes.

The trial court found that the enlargement of lot No. 8 was a voluntary act of the defendant, that it left the lot substantially the same as it had been before its boundaries were drawn, and that the enlargement offered the defendant no basis for obtaining relief from its contractual undertakings. "The trial court, in balancing the equities, could rationally have concluded that any hardship on the [defendant] was attributable primarily to [its] own refusal to honor [its] contractual commitments, to [its] own unexcused breach of contract." *Kakalik v. Bernardo,* 184 Conn. 386, 395–96, 439 A.2d 1016 (1981).

## V

The defendant's final claim is that the trial court erred in failing to consider or adopt the defendant's special defenses. Specifically, the defendant challenges the trial court's handling of two defenses, namely, (1) the provision in General Statutes § 47-33a (b)[5] that an agreement to extend the closing date of a contract for the sale of real estate beyond one year from the

---

[5] General Statutes § 47-33a provides: "(a) No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325.

"(b) The interest may be extended only by reexecution of the written agreement or by execution of a new written agreement, provided the agreement, whether reexecuted or newly executed, shall be recorded as directed by sections 47-10 and 47-17. The period provided by this section shall not otherwise be extended, whether because of death, disability or absence from the state or for any other reason. Upon the expiration of an interest the title to property affected by the interest shall not thereafter be considered unmarketable because of the expired interest.

"(c) Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced."

date of the original sales agreement must be recorded, and (2) the defendant's contention that the completion of Kenrose Terrace Road before the date of closing was a condition precedent to its performance. This claim is without merit.

The trial court refused to consider the first defense, based on General Statutes § 47-33a, because none of the defendant's four special defenses referred to that statute. At the close of the trial, the court requested that the parties file briefs on the claims of law raised at the trial. In its posttrial brief, the defendant raised General Statutes § 47-33a for the first time. On appeal, the defendant has attempted to characterize the request of the trial court for briefs as an invitation for the defendant to interpose additional special defenses. It is clear, however, that the court properly declined to consider the defendant's belated attempt to raise General Statutes § 47-33a, because it was not properly pleaded and the plaintiffs therefore had no opportunity to rebut the defendant's claims concerning it.

In regard to the second defense, namely, that the trial court failed to find that the completion of Kenrose Terrace Road was a condition precedent to the defendant's performance, the court found that the completion of the road was part of the defendant's performance under the contract and that, if any party's performance was contingent upon completion of the road, it was that of the plaintiffs. This factual finding is reasonably supported by facts in the record and therefore we will not disturb it.

There is no error.

In this opinion the other judges concurred.